[PRACTICE.]

## MALLOW and Others *against* HINDE.

Where an equity cause may be finally decided as between the parties litigant, without bringing others before the Court, who would, generally speaking, be necessary parties, such parties may be dispensed with in the Circuit Court, if its proofs cannot reach them, or if they are citizens of another state.

But if the rights of those not before the Court are inseparably connect-
ed with the claim of the parties litigant, so that a final decision
cannot be made between them without affecting the rights of the
absent parties, the peculiar constitution of the Circuit Court forms
no ground for dispensing with such parties.

But the Court may, in its discretion, where the purposes of justice
require it, retain jurisdiction of the cause on an injunction bill
as between the parties regularly before it, until the plaintiffs have
had an opportunity of litigating their controversy with the other
parties in a competent tribunal, and if it finally appear by the judg-
ment of such tribunal, that the plaintiffs are equitably entitled to
the interest claimed by the other parties, may proceed to a final de-
cree upon the merits.

*Feb. 12th.*        THIS cause was argued by Mr. *Bond* and Mr. *Brush*, for
the appellants, and by Mr. *Doddridge* and Mr. *Scott*, for the
respondents.

*Feb. 20th.*        Mr. Justice TRIMBLE delivered the opinion of the Court.

This is an appeal from the decree of the Circuit Court for
the District of Ohio, dismissing generally, with costs, the bill
of the appellants, who were plaintiffs in that Court.

The suit was a contest for land in the District, set apart on
the north-west side of the Ohio, for the satisfaction of the
bounty lands due to the officers and soldiers of the Virginia
line, or continental establishment, in the revolutionary war.

The plaintiffs set up claim to the land by virtue and under
a survey, No. 537, in the name of John Campbell. It ap-
pears that John Campbell, before his death, made his last
will and testament, whereby he devised his land warrants,
entries and surveys, in the military district, to Col. Richard
Taylor and others, his executors, in trust for the children of
the testator's sister, Sarah Beard; and that Taylor alone qua-
lified as executor, and took upon himself the trust. Taylor
never conveyed or assigned the warrants, entries, or surveys,
to Mrs. Beard's children, but permitted them, as the bill
charges, to take the management of them into their own
hands.

Elias Langham made sundry executory contracts with
Mrs. Beard's children, after they arrived at full age, which
contracts are set out in the bill, whereby, as the complain-

ants allege, Langham became equitably entitled to survey No. 537; and afterwards sold, and made deeds of conveyance for the land to the complainants; who, in consequence of their purchases from Langham, took possession of, and improved the land.

Thomas S. Hinde, having purchased and procured an assignment of a military warrant from Col. Richard Taylor, and belonging to him in his own right, made an entry thereof in Hinde's own name in the principal surveyor's office; and having caused a survey to be made thereupon, covering survey No. 537, in the name of Campbell, Hinde obtained a patent for the land from the government.

Being thus clothed with the legal title, Hinde instituted actions of ejectment in the Circuit Court against the appellants, and obtained judgments of eviction against them.

They filed their bill praying for an injunction against the judgments at law; and also praying that Hinde should be decreed to release and convey to them his legal title, and for general relief.

The bill charges, that Col. Richard Taylor, with full notice that the appellants were, in virtue of Langham's contract with the *cestuis que trust*, and Langham's sale to them, equitably entitled to, and in possession of, survey No. 537, fraudulently combined with Hinde and others, and improperly and without authority, withdrew the entry on which survey No. 537 had been made, and re-entered and caused it to be surveyed elsewhere; and that Hinde, availing himself of such improper and unauthorized withdrawal, had entered, surveyed and patented the land in his own name, he also having notice of all the circumstances attending the claim of the appellants; and that Taylor and the Beards refuse to perfect the survey by obtaining a patent, and refuse to convey or transfer it to the appellants.

The bill also alleges, that Langham had become equitably and legally entitled to the survey No. 537, as a purchaser thereof for taxes due thereon to the state of Ohio.

Hinde filed his answer, in which he denies the charges of fraud and collusion; insists the land had become vacant by the withdrawing of the entry in the name of Campbell, and by surveying it elsewhere; and that he had legally ap-

propriated it by his entry, survey, and grant; he neither admits nor denies the execution of the contracts alleged between Langham and the Beards, and puts the complainants upon proof; and he further insists that such contracts, if made, conferred upon Langham no equitable title: first, because the Beards had no power to sell, without the concurrence of Taylor, the trustee; and, secondly, because Langham had obtained the contracts by fraud, and had not paid the consideration stipulated.

Neither Taylor, the trustee, nor the *cestuis que trust*, with whom the complainants allege Langham contracted for the land, are made defendants, they being out of the limits of the jurisdiction of the Court.

No attempt has been made in the argument to support the validity of the tax sale, and it may be laid out of the case.

For the appellees it is insisted, that the proper parties are not before the Court, so as to enable the Court to decree upon the merits of the conflicting claims. And we are all of that opinion. It is plain, that the appellants cannot set up the survey No. 537, against the appellees' title, without first showing themselves entitled to that survey. They claim that survey, not by any assignment, or other instrument, investing them with a legal right to it, but by executory agreements, the validity and obligation of which the parties to them have a right to contest.

We cannot try their validity, and decide upon their efficacy, by affirming they confer upon the appellants an equitable right, without manifest prejudice to the rights of those not before the Court. The complainants can derive no claim in equity to the survey, under, or through Langham's executory contracts with the Beards, unless these contracts be such as ought to be decreed against them specifically by a Court of equity. How can a Court of equity decide that these contracts ought to be specifically decreed, without hearing the parties to them? Such a proceeding would be contrary to all the rules which govern Courts of equity, and against the principles of natural justice. Taylor, too, is the legal proprietor of the warrant, by virtue of which the entry and survey No. 537 was made, and in general the right of removal is incidental to the right of property. But it is al-

leged he has parted with that incidental right, although the general legal title of ownership remains in him ; or that he has exercised this incidental right fraudulently and improperly, to the prejudice of the appellants. .

Can any Court justly strip him of this incidental right, or convict him of fraud unheard ? Besides, if the Court should, by its decree, compel Hinde to release his legal title to the complainants, upon the grounds, that the entry and survey No. 537 are superior to his title, it would be giving to the complainants that which belongs to Taylor as trustee, and to his *cestuis que trust*, unless by their acts and agreements they have parted with their right to the survey. If the Courts of the United States were Courts of general jurisdiction, it could not be doubted, that Taylor, William and Joseph Beard, and Mr. M·Gowan and wife, would be necessary and indispensable parties, without whom no decree upon the merits could be made. But it is contended, that the rule which prevails in Courts of equity generally, that all the parties in interest shall be brought before the Court, that the matter in controversy may be finally settled, ought not to be adopted by the Courts of the United States, because from the peculiar structure of their limited jurisdiction over persons, 'the application of the rule in its full extent would often oust the Court of its acknowledged jurisdiction over the persons and subject before it.

It is true, this equitable rule is framed by the Court of equity itself, and is subject to its sound discretion. It is not, like the description of parties, an inflexible rule, the failure to observe which turns the party out of Court, merely because it has no jurisdiction over his cause ; but being introduced for the purposes of justice, is susceptible of considerable modifications for the promotion of these purposes. Accordingly, this Court, in the case of *Elmendorf* v. *Taylor*, (10 *Wheat.* 167.) has said, " That the rule which requires that all persons concerned in interest, however remotely, should be made parties to the suit, though applicable to most cases in the Courts of the United States, is not applicable to all. In the exercise of its discretion, the Court will require the plaintiff to do all in his power to bring every person concerned in interest before the Court. But if the case may

1827.

Mallow
v.
Hinde.

be *completely* decided, as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach, as if such party be the resident of some other State, ought not to prevent a decree upon its merits."

This doctrine was applied to the case where a small interest was outstanding in one not before the Court, as tenant in common.

In that case, the right of the party before the Court did not depend upon the right of the party not before the Court; each of their rights stood upon its own independent basis; and the ground upon which it was necessary, according to the general principle, to have both before the Court, was to avoid multiplicity of suits, and to have the whole matter settled at once.

In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. The rights of those not before the Court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant without directly affecting and prejudicing the rights of others not made parties.

We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all Courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground that no Court can adjudicate directly upon a person's right, without the party being either actually or constructively before the Court.

We have no doubt the Circuit Court had jurisdiction between the complainants and the defendant, Hinde, so far as to entertain the bill, and grant an injunction against the judgments at law, until the matter could be heard in equity.

And if it had been shown to the Circuit Court, that from the incapacity of that Court to bring all the necessary parties before it, that Court could not decide finally the rights in contest, the Court, in the exercise of a sound discretion, might have retained the cause, and the injunction, on the application of the complainants, until they had reasonable time to litigate the matters of controversy between them, and Taylor and the Beards, in the Courts of the State, or

such other Courts as had jurisdiction over them ; and if then it was made to appear by the judgment of a competent tribunal, that the complainants were equitably interested with the rights of Taylor, the trustee, and the *cestuis que trust* in the survey No. 537, the Circuit Court could have proceeded to decree upon the merits of the conflicting surveys.

Such a proceeding would seem to be justified by the urgent necessity of the case. in order to prevent a failure of justice ; and the cause would have remained under the control of the Circuit Court, so as to have enabled it to prevent unreasonable delay, by the negligence or design of the parties, in litigating their rights before some competent tribunal.

The cause having been brought to a hearing before the Circuit Court in its present imperfect state of preparation, that Court could not do otherwise than dismiss the bill ; but as no final decision of the rights of parties could properly be made, the dismission, instead of being general, ought to have been without prejudice. So much of the decree as dismisses the bill generally must be reversed, and the decree, in all things else, affirmed ; and the cause is to be remanded to the Circuit Court, with directions to dismiss the bill without prejudice.