Petition for a Re-hearing.
june 22.
The counsel for the plaintiffs in error earnestly desires a re-hearing of this case.
This is an action of covenant, founded upon an agreement under the seal of the parties thereto, wherein the plaintiffs in error agree to purchase from Relf and Bled-soe, all the bagging and bale-rope which said Relf and Bledsoe had then, at the date of said agreement, on hand, that is, on the 7th of April, 1835, and all which they might manufacture from said day until the 1st day of October, 1835, at the rate of twenty seven cents per yard for bagging, and six and a half cents per pound for bale-rope; O’Bannon and Bradshaw agreeing to pay, on *322 the 20th of May, 1835, for all the bagging and bale-rope, they might receive up to that time, and the other payments to be on the 20th of June, July and August of the same year, and on the 1st of October, 1835, according to the amount of bagging and bale-rope received up to the above specified dates. Relf and Bledsoe agree to deliver the bagging and bale-rope, at their factory in Shelbyville, and they oblige themselves to deliver “good, heavy, merchantable bagging and bale-rope of the usual size and quality.” O’Bannon and Bradshaw, in their declaration, allege that, after the making the said agreement, to wit. from the date thereof, until the 1st of October following, Relf and Bledsoe, from time to time, delivered to them, at the factory of the defendants in Shelbyville, divers parcels aud quantities of bagging and bale-rope, manufactured by the said defendants, amounting in all to nineteen thousand six hundred and twenty nine yards of bagging, and-pounds of bale-rope, at the said rates and prices per yard and per pound. The plaintiffs allege, also, that they had well and truly performed and fulfilled all things, which, by the terms of their said agreement, they were bound to perform.— They allege, further, that the defendants, Relf and Bled-soe, had broken their covenant in this: The aforesaid quantity of bagging which they had delivered to the plaintiffs, was not “good, heavy, merchantable bagging, and that no part of the same was good, heavy, merchantable bagging.” This is the breach assigned. The defendants demurred — thus admitting the allegations in the declaration, and the breach of the covenant assigned — the demurrer was sustained, and this Court has affirmed the judgment,because the bagging was accepted by the plaintiffs, and because, in their declaration, they do not show, either that they had no opportunity of inspecting it, at the time of delivery, or that they did not then know, or might not, from the notice of the goods and of the transaction, have known, of the defects now alleged, by reasonable diligence; and as the declaration does not show when the defects were discovered, or that, when discovered, the defendants were notified, or the return of the goods tendered, nor any reason why this was not done, the Court *323 is of opinion, upon the whole declaration, the presumption is, that the acceptance was a discharge of the defendants’ covenant; and therefore, that no cause of action is shown.
I have thought proper to state, with some particularity, the true character of the case, and to recite the opinion of the Court upon it. I am convinced that no case has recently, if ever, been brought within the investigation of this Court, and its attendant lawyers, which required closer examination and scrutiny than this very case. The manufacturing, commercial, and all the solid interests of the Commonwealth, depend upon the principles and rules of law to be established in this case. The attendant attorneys of the Court, and the Court itself, if it were possible, might have acquired additional and increased reputation by extracting from the appropriate authorities, the true principles which should govern it. Yet, the attorneys for the defendants describe it as an action of assumpsit; and the Court, in its opinion, suggests defects in -the declaration, which, it appears to the undersigned, will require a new form of declaring in actions of covenant. I know of no exception to the rule, that, in a case like the present, after setting out the contract, only requires of the plaintiff to assign breaches in the words of the covenant sued on. The defendants, by their written covenant, bound themselves to deliver to the plaintiffs, bagging of a certain quality. The plaintiffs say the bagging delivered was not of the quality stipulated, but was of a contrary quality. To this declaration, the defendants demur, thereby confessing that they had broken their covenant, as is alleged. Upon the whole declaration, say the Court, the presumption is, that the acceptance was a discharge of the defendants’ covenant. The discharge of,the defendants’ covenant, by the act of the plaintiffs, is a fact to be pleadfe(A and proved. This Court cannot presume it. The defendants have not plead a discharge, yet the Court presume it from the declaration of the plaintiffs! Does the Court mean that, by accepting the bagging, the plaintiffs lost, by operation of law, their right to recover from the defendants, in this case? This position stands rebuked. *324 by public policy, and a multiplicity of authorities. The Court, from its reasoning, and the conclusion thereon, evidently have had in view exclusively those cases which involved the rights of vendees who purchased without any express warranty, on the part of *their vendors, as to the quality of the goods purchased; and in regard to whom it often becomes a matter of difficulty with the Courts, to determine whether or not, under the facts in evidence, in such cases, they are exempt from the operation of the maxim, caveat emptor. The Courts have felt it their duty, in administering the law, to lay down rules calculated to prevent fraud; to protect persons who are necessarily ignorant of the qualities of a commodity they purchase; and to make it the interest of manufacturers and those who sell to furnish the best article that can be supplied. From this disposition of the Courts, arises the doctrine of implied warranties, as to the quality of goods sold. Yet this Court has, in this case, adopted a mode of reasoning which converts those principles which were laid down as a protection for purchasers, into a sword against the rights of the present plaintiffs. I will relieve this case of all difficulty by reference to authority and to law. The rule is universal that, by requiring a warranty, a purchaser is understood as excepting to all terms, but such as are stipulated in the contract. And it is equally an invariable rule that, when there is an express warranty in the sale of goods, the purchaser may retain the goods and maintain his action against the seller, if they should not be of the quality stipulated to be delivered, and he will "be entitled to such damages as he may sustain by their not answering the description in the contract.
Goods sold by sample is one mode of warranty. Yet in the case of Yates vs. Penn, referred to in Comyn on Contracts, p. 112, the plaintiffs, who brought their actio'n on the warranty, recovered, although they had on two occasions inspected the bacon purchased by them, and made no objection, and claimed no allowance for spoiled bacon, and afterwards accepted and paid the bills drawn upon them for the price.
The purchaser of a warranted article has a right to *325 keep it, and recover damages for the breach of a warranty; or he may return it, and still maintain an action for breach of warranty. He may even prove the inferiority of the article, in diminution of damages in an action brought by the vendor to recover the stipulated price, instead of compelling him to pay the whole stipulated price in the first instance, and to leave him to sue on his warranty, for the breach thereof, in another action.— Germaine vs. Burton, 3 Stark. N. P. Rep. 32. Chit, on Cont. 136—137. If a merchant buy goods, the seller warranting them to be of a certain description of quality, and the merchant, without examining, sends them to the West Indies, where, upon opening, he finds them not to be of the quality warranted, he may store them, give notice to the seller, and recover back the money paid for them, in an action for money had and received; or he may bring his action on the special agreement of warranty, and recover damages for the full amount of the injury he has received. 12 Wheaton, 193. It is not necessary, to entitle a ven-dee to an action for the breach of an express warranty, to offer to return the property. This is the invariable principle in this country, in regard to sales of horses, and has been over and over acted upon and recognized by this Court. No case can be found contrary to it.
Is not the agreement alleged to be broken, an express warranty? To create an express warranty, the word warranty need not be used, nor is any precise form of expression required; any affirmation of the quality of the thing sold, amounts to a warranty. Will this Court reverse long-established principles, and deprive these merchants — the plaintiffs in this writ of error — of the benefit of the warranty, contained in the agreement of sale, and by which they were induced to purchase of the defendants, their bagging and bale-rope. The plaintiffs, before they would agree to buy of the defendants, and accept their fabrics, required them to stipulate that it should be of a certain quality — that it should be “good, heavy and merchantable.” It is received, from time to time, as manufactured, from April to October, sent to the south, and is found to be unmerchantable; and be *326 cause the plaintiffs performed their part of the agree--' ment, by accepting the bagging, they thereby discharge. the defendants from their covenant! Such is the doctrine settled by the Court. The law for the protection of the purchaser, and the advancement of the arts, implies that the grower or manufacturer of an article warrants it to be good and merchantable, on the sale of it; and makes him liable for defects in the article, although accepted by the purchaser; and yet, the purchaser who takes the precaution to require an express warranty, is presumed to have discharged his vendor by accepting the manufactured article. The establishment of such doctrine would be generally detrimental to trade and to manufacturers; and, in this instance, would assail the obligation of contracts. The keeping of goods a length of time, without objection, will sometimes be evidence that the goods delivered are of the sort sold to the purchaser. But never has been construed as discharging an express agreement as to their quality. Whether the goods are or not of the quality stipulated to be delivered, is a question which should go to the jury. But notwithstanding the defendants in error have admitted and confessed that the bagging delivered by them, was not of the quality they agreed to deliver; the Court interposes a “presumption” which cuts off the plaintiffs from all redress for the injury they have sustained, and apply the maxim of caveat emptor to protect the defendants, and to shield them from all responsibility for a breach of their express written warranty. The inferences of the decision are, that every individual in a vast community, knows, by inspection, the quality of all the innumerable products of the earth and of the ocean, and of all that are created by human art, and in any form are circulated through the channels of trade and commerce. Of what avail will it be to the merchant, who perhaps never saw a cotton plant, and who knows not what sort of bagging the planter prefers, and who is no judge of the fabric, to require an express warranty from the manufacturer, upon purchasing his fabrics? I beseech the Court to reflect, lest it adopts a rule which, instead of preventing, will be a protection to fraud; which, instead of “protecting persons who are *327 necessarily ignorant of the quality of a commodity they purchase,” will commit them to the mercy of mercenary men, and which makes it the interest of manufacturers and those who sell to put off upon ignorant and unwary purchasers, the most defective articles, by warranting them to be good and merchantable. It should be borne in mind, that the liability of the defendants arises out of their agreement with the plaintiffs, and does not result from the fact, that the plaintiffs had, or had not, an opportunity to inspect the bagging at the time of delivery, or from any of the reasons suggested by the Court, as affording a presumption that the covenant of the defendants was discharged. When the defendants have tendered an issue to the plaintiffs’ declaration, and the jury are sworn to try the cause, then the fact of the plaintiffs having inspecting the fabrics, might be received, and have force as testimony conducing to show that they were of the quality stipulated to be delivered. But the Court requires the plaintiffs to aver, in their declaration, matters that can only operate as a defence for the defendants, upon their plea of covenants performed. The Court say, in effect, that it was the duty of the plaintiffs, when the defects were discovered, to have notified the defendants, or tendered a return.
The Court, in this, confounds with the present case, those cases where the purchaser brings his action to recover the price paid, or defends the suit of the vendor for the purchase-money, thereby seeking a rescission of the contract, which is only allowable in cases of implied warranties. When there is an express warranty, the doctrine is, that, where the property in the specific chattel, has passed to the vendor, and the price has been paid, he has no right, upon the breach of warranty, to return the article, and revest the property in the vendor, and recover the price as money paid on' a consideration which has failed; but must sue on his warranty, unless there has been a condition in the contract authorizing the return, or the vendor has consented to rescind the contract. 1 Doug. 23, Towers vs. Barrel, 1 T. R. 133. See note, Chitty on Contracts, 138-9. I repeat, the record shows a breach of the defendants’ covenant: will' the *328 Court presume that they have been discharged from then covenant, without even a plea filed on their part, alleg-jng tjj6 fact5 anc|5 jn despite of this suit, praying damages for the breach thereof, and in defiance of the law as settled in the foregoing authorities, that compels the plaintiffs to sue upon the warranty? The Court should reflect, that, from the terms of the contract, and from the necessity of the case, the bagging was delivered at different intervals, as manufactured, and consequently sent, from time to time, by the plaintiffs to the destined and distant market; and that it was doubtless for the convenience, and security, and advantage, of both parties, that the fabrics should be received without inspection, and the plaintiffs left to rely upon the warranty.— I sincerely believe the law has not been properly administered in the present instance, and feel confident that a court of acknowledged reputation, feeling solicitous that its decisions, should be satisfactory to all, will indulge a re-hearing of the case.

James C. Sprigg, Attorney for plaintiffs.

October 27.
The re-hearing was granted, and the case was again submitted, and reconsidered at the present term; but no change was made in the decision. The Court, in announcing this determination, added the following remarks to the former opinion:—
In support of this opinion, after a re-argument of this case, we deem it necessary only to refer to the opinion of this Court in the case of Dana vs. Boyd, 2 J. J. Marsh. 593-4; and to state that there seems to be a distinction, not sufficiently regarded by the counsel for the plaintiffs, between a warranty upon an executed sale of a chattel, and a covenant in an executory contract, that articles to be manufactured and delivered at a future day, should be of a certain description or quality.