POTTLE and another *against* THOMAS.

*A,* residing in the state of *Maine,* conveyed by deed to *B,* an inhabitant of the town of *W,* in this state, a patent right to use and vend in that town, for the term of two years, certain machinery for cleansing grain ; for which *B* gave his promissory note to *A,* payable in two years. At the same time, it was agreed between *A* and *B,* that *B* should build a machine under the patent, and use his endeavours to suit the public and make it profitable to himself; but, if it should fail to answer the desired object, at the expiration of two years, *B* was to surrender the deed, with the avails of all the rights by him sold ; and *A* was to take of *B* his first made machine at cost, and to give up his note. The patent was a valid one, and was useful in the state of *Maine* and some other places. *B* built a machine, and made all proper exertions to bring it into use in *W,* but could not prevail upon a single inhabitant of that town to use it; and the machinery was of no value to him or the public, there. *B* had not offered the machine built by him, to *A,* but had disposed of it to be used elsewhere ; nor had *B* given *A* notice of the failure of the machine, or surrendered to him the deed conveying the patent right. In an action brought by *A* against B on his note, it was held, 1. that upon the facts of the case, the question of consideration for the note was one proper to be decided by the court, and ought not to be left to the jury as a mere matter of fact; 2. that such facts shewed a valuable consideration ; 3. that *B* had neither complied with the terms, on which, by the agreement, the note was to be given up, nor shewn a sufficient excuse for non-compliance, and therefore, could not avoid the note as a rescinded contract.

THIS was an action on a promissory note, for 150 dollars, dated the 28th of *October,* 1834, and payable two years after date.

The cause was tried, on the general issue, at *New-Haven, January* term, 1838.

The plaintiffs reside in the state of *Maine ;* and the defendant in the town of *Woodbridge,* in this state. At the time of the making of the note, and as the consideration for it, the plaintiffs, by a deed of that date, sold and conveyed to the defendant, the right of using and of selling to others to be used in the town of *Woodbridge, Lane's* patent machine for cleansing wheat and other grain, and also the right to propel such machine, by means of a patented endless chain horse-power. At the same time, the parties entered into a written agreement in the following terms: " This agreement, made this day, between *William R.* and *Edward L. Pottle,* of *Minot, Cumberland* county, *Maine,* on the one part, and *Charles*

*Thomas,* of *Woodbridge, New-Haven* county, *Connecticut,* on the other part, *witnesseth,* That we, *William R.* and *Edward L. Pottle,* agree with said *Thomas,* that he shall have the right of making, using, and vending to others to be used, *Samuel Lane's* machinery for threshing and cleansing wheat and other grain, patented in 1831 ; also, his patent for an endless chain horse-power, granted in 1830 ; as appears by deed, this day given by us, the said *Pottles,* to the said *Thomas.* Now, if said machinery do not so suit the public, with proper exertions on the part of said *Thomas,* so as to make it profitable, then the said *William R.* and *Edward L. Pottle* agree to take his first machine and horse-power at cost, and to give up to said *Thomas* a certain note this day given by said *Thomas,* for 150 dollars, payable two years from date. And the said *Thomas* agrees to have a good threshing machine and horse-power, as above described, built, and to use his endeavours to suit the public, and make the same profitable to him, the said *Thomas.* But if said machine should fail to answer the desired object, at the expiration of two years from date, the said *Thomas* is to give up to said *Pottles,* the deed he this day received, with the avails of all the rights by him sold, after deducting a reasonable compensation for his trouble of selling rights of said machines." [Signed by the parties.]

The defendant claimed to have proved, that he had made proper exertions to introduce the machinery under said patents into general use in the town of *Woodbridge,* but that he found it impossible to prevail on any one inhabitant of that town to use the machine ; and that the machinery was useless, and was, and could be, of no value whatever, either to himself or to the public, in that town. He also claimed to have proved, that he had procured a machine to be built under said patents, and had made all proper exertions to bring it into use in that town ; but finding it to be useless, and of no value there, he had made the best disposition of it he could, by selling it, soon after it was built, to a person who was willing to use it elsewhere.

There was no evidence that the plaintiffs had any known agent residing near the defendant ; or that the defendant had ever offered the machine horse-power, so by him built, to the plaintiffs ; or that the defendant had ever given up, or offered to give up, to the plaintiffs, said deed, or the right so conveyed to him ; or had ever notified the plaintiffs, that said machine

had failed to answer the desired object in the town of *Wood-bridge*.

It was admitted, that the patents were legally issued and valid; and that they were useful in the state of *Maine*, and in some other places.

The defendant claimed to have shewn, that the note in suit was fraudulently obtained, and void; and that he had, in point of fact, received no consideration whatever for it; and that he was, therefore, entitled to a verdict in his favour.

The plaintiffs claimed, that they were entitled to recover, unless the jury should find, that the note was fraudulently obtained; and that the court should so instruct the jury.

The court instructed the jury, that if they should find that the note was obtained by fraud, on the part of the plaintiffs; or that the patent rights, so conveyed to the defendant, were of no value whatever; and that the defendant, in consequence, had received no consideration for the note, they must return a verdict for the defendant: but if they should find, that there had been no fraud; and that the rights conveyed by the plaintiffs to the defendant, as the consideration of the note, were of any value, the verdict must be for the plaintiffs, for the amount of the note and interest.

The defendant had a verdict; and the plaintiffs moved for a new trial for a mis-direction.

*Kimberly*, in support of the motion, contended, 1. That the terms of the agreement made by the parties, at the time of executing the note, do not sustain the defence.   In the first place, it is to be observed, that the several parts of that agreement are to be taken together, in connexion with the note, as forming one entire contract.   Secondly, the delivery of the machines and the re-conveyance of the right, are conditions, upon the performance of which, the note is to become invalid.   Thirdly, the defendant cannot claim to be discharged from his obligation until he performs the act upon which the discharge is to be effectual.   *Chitt. Cont.* 272, 3.   *Cranley* v. *Hillary*, 2 *Mau. & Selw.* 120.   *Smith* v. *Loomis*, 7 *Conn. Rep.* 110. Fourthly, the remote residence of the plaintiffs does not absolve the defendant from his obligation to deliver the machine and to return the deed: at least, he must notify the plaintiffs of

his readiness so to do.    *Chitt. Cont.* 272. & seq.    *Bixby* v. *Whitney*, 5 *Greenl.* 192. 195.

2. That the defence cannot be sustained upon the ground of a total failure of consideration.    First, the motion states, that there is a *valid* and *valuable* patent, which the defendant retains, together with the right, for all future time, to use it.    Although the defendant could not make it useful, during the two years trial, it does not follow, that it could never be useful. Secondly, to enable a party to defend, or recover back the money paid, on the ground of a failure of consideration, he must rescind the contract *in toto.    Okell* v. *Smith* & al. 1 *Stark. Ca.* 107.    *Johnson* v. *Hill*, 3 *Stark. Ca.* 171.    *Moggridge* v. *Jones*, 3 *Campb.* 38.    *Conner* v. *Henderson*, 15 *Mass. Rep.* 319.    *Thornton* v. *Wynn*, 12 *Wheat.* 183. 193.

3. That as by the agreement the defendant was to deliver the machine and re-convey the right, it is not competent for the defendant to retain them both, and claim that they are of no value.    In case of a warranty broken, as a general rule, an action may be sustained for the damages, without returning the article warranted ; but not so, if at the time of sale, there was an agreement to return it.    *Chitt. Cont.* 137.    *Adam* v. *Richards*, 2 *H. Bla.* 573.    12 *Wheat.* 193.

*Ingersoll*, contra, remarked, that the only part of the charge complained of, by the plaintiffs, is that where the court tell the jury, that if the patent rights conveyed to the defendant were of no value whatever, and the defendant in consequence had received no consideration for the note, their verdict must be for the defendant ; but if of any value, they must find for the plaintiffs ;—they then contended, 1. That this is strictly within the principles recognized, by this court, in the late cases of *Cook* v. *Mix*, 11 *Conn. Rep.* 432., and *Pulsifer* v. *Hotchkiss*, 12 *Conn. Rep.* 234.    In the former case, the court say : " We suppose it to be perfectly well settled, that when a total failure of consideration is shewn, it is an answer to the action."    This principle is fully adopted in *Pulsifer* v. *Hotchkiss.*

2. That in such case it is not necessary to *rescind* the contract, before suit.    If there is no consideration, there is nothing to restore.    The court say, in *Pulsifer* v. *Hotchkiss*, 12 *Conn. Rep.* 240., " He should be put to his election, and either treat

New-Haven,
July, 1838.

Pottle
v.
Thomas.

the contract as good, and pay his note, or avoid it, by restoring the consideration, *if any there be.*" The defendant's interest in the patents was limited to the town of *Woodbridge;* and there, it is found, they were of *no value.* So far as they are concerned, then, he had nothing of value to restore. As to the machine—*that* the defendant himself made—he did not receive it of the plaintiffs; and, of course, could not *restore* it to them. The stipulation on the part of the plaintiffs to take it off the defendant's hands, was for *his* benefit.

WILLIAMS, Ch. J. The general principles laid down in the charge to the jury, are unexceptionable; as that fraud, or the want of consideration, will render a note void. But a question arises, whether upon a view of the circumstances of this case, something more should not have been said to the jury. Indeed, upon the facts admitted or found, it appears to us, that the question what effect the stipulations between these parties ought to have in the case, and also the fact of consideration, are mere questions of law, upon which the jury should have had the opinion of the court. The jury have indeed found, that there was no consideration for the note; and it has therefore been supposed, that nothing was left for the court. But if the facts presented show, that there was what in law would constitute a consideration, then it is very evident, that justice has not been done; and we are bound to grant a new trial, either because the jury have found a verdict contrary to the facts proved, or because the court should have instructed them, that those facts shewed a consideration.

Do not the facts shew, that there was a consideration for this note? The plaintiff has a valid and legal patent for certain machinery, which, in some places, had been found useful; and he sells a right to the defendant to use this machinery in the town of *Woodbridge.* Now, it is apparent, that the value of the right to use such patent in a particular place, may depend upon circumstances wholly independent of the intrinsic value of that right. Thus, a most valuable improvement in machinery, to be moved by water, would be of no use in a section of country where there were no water privileges. *Whitney's* cotton gin, so immensely important in our *Southern* country, would be of no value, if its use were to be confined to *New-England.* And yet, if an inhabitant of *Con-*

*necticut* should embark in the experiment of raising cotton, and purchase a right to the cotton gin for this state, he would find some difficulty in showing that the *note given therefor* was void, although he proved unsuccessful in raising cotton. The machine would be no less adapted to the object in view, than it would be in *Georgia.* The failure would not arise from the want of value in the thing sold, but from the fact that it was not adapted to the wants of the country, in which it was to be used. That risk is one, which the purchaser, not the seller, must run. The market value of an article, in his own country, is ordinarily best known, by him who purchases for that market; and in the absence of fraud, the seller cannot be accountable for it. Should a *Southern* merchant purchase woollen goods, to be retailed in the *Southern* states only, could he say, when called upon for payment, that the consideration had failed, because he could find no purchasers, his goods *not being adapted to the climate?* There, the articles sold, were in themselves valuable; but where they could be sold to advantage, was a matter of calculation. The purchaser and seller would each speculate upon this subject, at his pleasure; and neither would be responsible for the failure of the calculations of the other. So too, if a patent was taken out for a useful improvement in steam-boats, and the patentee should sell the right, for a particular state; would an objection from the vendee be allowed, that upon trial it was found, that the waters of that state were not adapted to boats of that description, in which this machinery would be useful? Or, if a great improvement should be introduced, by some new implement of agriculture,—such as a mowing or raking machine,—and its utility could be attested by thousands, and a sale of a right should be made *for a country* where the inhabitants were so attached to the scythe or the rake, that no sales could be made; would that fact affect, in any manner, the contract of sale? Would the vendor be made accountable for the taste or the judgment of the people of that district? Would it not be enough for him to show, that the thing parted with was all it purported to be,—a new and useful invention? And if so, would not the vendee be left to the result of his own speculations? Now, in this case, the patents were valid patents. The machines, where they were needed, were useful. When then it is said, that they were of no value to the plaintiff, noth-

New-Haven,
July, 1838.

Pottle
v.
Thomas.

ing more is found than that, for some reason or other, they were not saleable in that place. But another fact, which is also found, shows, that the want of value could not have arisen from any intrinsic defect in the patents, but from some other circumstances.

To hold, then, that this note is void for want of consideration, would be to make the plaintiff responsible for the failure of the defendant to sell a machine, which had proved valuable elsewhere. For although the jury have found, that it was of no value to him and useless, yet it is also found, that it has proved useful elsewhere. The fact that it was not valuable in that place, may have arisen from the fact that no grain was raised there, which required the use of this machine; or from the taste or prejudice of the inhabitants; for neither of which is the plaintiff in any measure answerable, unless by virtue of a special contract to that effect. The verdict of the jury, when connected with another fact found, that this patent had proved useful elsewhere, only proves, that in this place, it was useless.

The case then is merely this; that the plaintiff sold to the defendant the right to use a valid patent in the town of *Woodbridge*, which had proved a useful one in some places. This gave the defendant a right to all the profits he could make by such use. What they were was uncertain, at that time. They might be considerable; and they might be nothing. They have turned out to be nothing. Can we, therefore, say, that this right was then worth nothing? If the patent had proved useful elsewhere, was not its success in that place, a matter about which the parties had a right to calculate, each for himself, as well as for the chances of a prize in a lottery? In *Barnum* v. *Barnum*, 8 *Conn. Rep.* 469. we held, that the sale of a ticket, which had actually drawn a blank, at the time of sale, and which was then in fact worthless, was a good consideration for a note. There, the party got what he stipulated for—the chance that the ticket had drawn or would draw a prize. Here, the defendant got exactly what he stipulated for—a right to use, and of course to make a profit from, if he could, within certain limits, a patent, which had proved valuable elsewhere. And in the absence of fraud, we see not how he can say, that the consideration has failed, because his speculation has proved unsuccessful, any more than the purchaser of a ticket, which had drawn a blank. How a useful patent

will, in a limited time, succeed, in a particular place, is always a matter of doubt ; and the purchaser takes the right, subject to this doubt ; and if successful, he has the undoubted right to retain the profits ; and if unsuccessful, he cannot, of course, resort to his vendor, or cast the loss upon him. If indeed the want of success arises from the fact that the patent is invalid ; and if the invention is neither new nor useful, it is invalid ; then, he may say, he has received nothing. But how a person who has obtained the use of a new and valuable invention, can say he has received nothing, and there was no consideration, it is difficult to imagine. The mere right to use such an invention, or to sell it, is necessarily a consideration ; and if a jury find it is not, they find a fact entirely inconsistent with another fact found or admitted in the case.

The court, therefore, are of opinion, that there was a consideration for this note ; and that upon these facts, the jury ought so to have been instructed, unless indeed the express stipulation entered into by the parties, varies the case.

That this agreement may place the parties upon different ground, we have no doubt. The parties thereby seem to have made an arrangement with reference to the very event, now claimed to have happened. By these stipulations, they provide for the unsuccessful issue of the defendant's experiment. Taking it for granted that the patents were valid, and that the invention had proved useful in some places, but might not prove acceptable or profitable everywhere, they provide, that two years shall be allowed for the trial ; that then, if upon proper exertions made by the defendant, the use of the patent right did not prove profitable, or suit the public there, the plaintiff would take the first machine at cost, and give up the note, and the defendant might return the deeds with the avails of what he had sold, deducting a reasonable compensation for his trouble. Now, what reason exists why this arrangement should not be regarded ? Is it not reasonable ? Is it not mutual ? Is it not exactly calculated to meet the case which has occurred ? And can the court assume upon themselves to say, that the parties cannot make their own stipulations, as to the terms upon which this note shall become void ? In other words, may not the parties prescribe for themselves, the terms which shall controul their responsibilities ? If, as it is believed this principle cannot be questioned, has it been regarded ? We

*New-Haven,*
July, 1838.

Pottle
*v.*
Thomas.

have seen, that these parties, in the sale of the patent rights, and the taking of the note therefor, made a contract, which was obligatory upon them. They then contract further, upon what terms that contract shall be rescinded, or shall become void. The plaintiffs themselves have no right whatever to make it void. But the defendant has a right, at the end of two years, to rescind it, upon a certain event, and upon certain terms. The event is, that it shall not suit the public and shall prove unprofitable, he making proper exertions; and the terms are, his delivering up the deeds and accounting for the profits. The plaintiffs further agree to receive the first machine he shall have made, at the first cost.

Now, that the defendant must have made suitable exertions to bring this right into use, has not been denied. And why is he not equally bound to comply with the other stipulations he has made? They may not be as important; but still the parties have thought them important enough to provide that they shall be performed. And why shall they not be performed? As to accounting for the proceeds, perhaps it is sufficient, that there have been none. And yet as this is a fact within the knowledge of the defendant alone, it would seem as if he should have given notice of this, before he could demand the note. However that may be, he expressly stipulates to return to the plaintiff his deeds. It is not pretended, that he has offered to do this; and in answer to it, it is said, they would be of no value, because it has been found, that the right to the machines in this town, is of no value. It has indeed been found, that the machines did not suit the public *in that place,* and were of no value to the defendant. Does it however necessarily follow, that this will always be the case; or if they have been of no use to the defendant for these two years, that it can be no disadvantage to the plaintiff to have this right outstanding, during the existence of his patent? If, for instance, he was desirous of selling a right for the county of *New-Haven,* can we say, that the fact that there were deeds of the right for the town of *Woodbridge* outstanding, would have no effect upon the sale? Besides, as this rescinding of the contract depends entirely upon the agreement of the parties, we think the terms of that agreement must be strictly complied with. And although it has been very properly held, that if by the special terms of a contract, the vendee is at liberty to return an article

New-Haven,
July, 1838.

Pottle
v.
Thomas.

sold, an offer to return it is sufficient; (*Thornton* v. *Wynn*, 12 *Wheat.* 193.) yet no case has been produced, where the parties, by their contract, have prescribed that there should be a return of the thing sold, in which it has been held, that the party might retain it, and yet claim the benefit of the return. To avail himself, therefore, of this right to rescind the contract, the defendant should have complied with the terms imposed by that contract.

By that contract, it was further provided, that if, by proper exertions of the defendant, it was not made profitable, then the plaintiffs were to take his first machine and horse-power at cost, and give up the note in question. The defendant now demands the note, without having offered to the plaintiffs said first machine and horse-power. Of course, he demands it upon other terms than those agreed upon. If he had shewn, that he could not deliver to the plaintiffs this machine, in consequence of inevitable accident, that might have been an excuse. But he makes none, except that this might have been a burthen to the plaintiffs; and for aught we know, it might have been advantageous to the plaintiffs. The use of this machine is, in some places, we are to suppose, profitable; and when the defendant, instead of taking any pains to comply with this contract, chooses to sell this machine, we are not to presume, that he took a course the most disadvantageous to himself. He might not, indeed, have been bound to send this machinery to the plaintiffs in *Maine ;* but we think he was bound to take some steps to notify the plaintiffs of his intention to rescind the contract, in the mode therein pointed out. This he has entirely failed to do. Nor can it make any difference, that these various stipulations are embraced in separate instruments. It is well settled, that where several instruments are executed at one and the same time, by the same parties, relative to the same subject matter, to effectuate one object, they are to be taken as a part of the same agreement. *Isham* v. *Morgan,* 9 *Conn. Rep.* 378.

Suppose, then, these terms had been appended to the note; would they not have made it conditional? And could it have been seriously contended, that the note could have been avoided, but upon the terms contained in that condition? Or, would it have been claimed, that the plaintiffs had their remedy upon these stipulations, and so the note was void, whether the de-

fendant regarded them or not ? We cannot accede to either of these propositions. The parties, having in view the very event which has happened, have prescribed their own terms, as to the consequences of that event; and we know no rule of law or justice, which requires the court, when they have thus prescribed for this very case, to say, that another rule shall be adopted than that chosen by them. Whether, therefore, we look at this case, with or without the special agreement, the court are satisfied, that the defence to this suit was not sustained; and that there must be a new trial.

*New-Haven, July, 1838.*

*Pottle v. Thomas.*

In this opinion the other Judges concurred.

New trial to be granted.