VIRGINIA C. MINING, MILLING & SMELTING CO. et al. v. CORRIGAN.

(Circuit Court of Appeals, Sixth Circuit.   May 18, 19'17.)

No. 2924.

1. CORPORATIONS ⬤210—ACTION BY STOCKHOLDERS—NECESSARY PARTIES.

A Mexican corporation was organized to hold the legal title to mining property, and all of its capital stock, consisting of 10 shares, was turned over to an Arizona corporation, which was to finance and operate the mines. The Arizona corporation sold 4 shares of the Mexican corporation's stock to the M. Company, and C., the organizer and president of the Arizona and Mexican corporations, pledged the remaining 6 shares to secure an indebtedness which he was unable to pay. The pledgee thereof obtained possession of the 6 shares of stock, assumed control of the Mexican corporation, which he reorganized, and which, through a board of directors controlled by him, contracted to sell the property to defendant. The M. Company and the Arizona corporation sued defendant to restrain him from consummating his purchase of the property, on the ground that the pledgee's possession of the stock and his control of the Mexican corporation were fraudulent. *Held*, that the Mexican corporation was an indispensable party, and the pledgee would also seem to be a necessary party.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 808–813.]

2. CORPORATIONS ⬤210—ACTION BY STOCKHOLDERS—NECESSARY PARTIES.

The suit could not be maintained, without the presence of the Mexican corporation, on the theory that, since plaintiffs owned all the stock of that corporation, its entity and corporate existence might be ignored, as those under whom defendant claimed were denying the Arizona corporation's ownership and right of control of the 6 shares of stock, and a prime object of the suit was to establish such ownership.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 808–813.]

3. INJUNCTION ⬤137(2)—TEMPORARY INJUNCTION—INJURY TO DEFENDANT.

Such suit could not be maintained, to the extent of giving relief through a temporary injunction, to maintain the status quo, as ancillary to a pending suit and possible later proceedings, where it did not affirmatively appear that defendant could not be injured thereby, it appearing by answer that defendant had contracted to pay for the property in installments; thus, because of the injunction not being binding upon his vendor, he might lose his rights as a result of an injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit by the Virginia C. Mining, Milling & Smelting Company and another against James W. Corrigan. From a decree dismissing the bill of complaint, plaintiffs appeal. Affirmed.

Kline, Clevenger, Buss & Holliday, of Cleveland, Ohio, and Sturdevant & Sturdevant, of St. Louis, Mo., for appellants.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for appellee.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. This is an appeal from a decree dismissing a bill of complaint under general equity rule No. 29 (198 Fed. xxvi, 115 C. C. A. xxvi). For immediate purposes, the allegations of the bill may be thus sufficiently summarized:

In 1905, one Clayton had a verbal option for the purchase, from the owners, of the Hidalgo Mines, socalled, in Chihuahua, Mexico, at a price of 50,000 pesos. Clayton sold this option to one Chew (the written option being taken for his benefit, in the name of one Raines); Chew assuming to pay to the owners the purchase price mentioned in three equal annual installments, beginning January 15, 1906. The mines were then conveyed to a Mexico corporation called the Virginia C. Mining, Milling & Smelting Company, capitalized at 10,000 pesos, and organized for the purpose merely of holding the legal title to the mines. All the capital stock of the Mexico corporation was immediately turned over to an Arizona corporation of the same name (one of the plaintiffs here), which was to finance, manage, and operate the mines. The Arizona corporation was capitalized at $1,250,000, and all of its capital stock was turned over to Chew, who, as an additional payment for the option mentioned, gave one-eighth of it to Clayton, agreeing also to give the latter 10,000 pesos, in three annual installments, maturing at the same time as the installments of purchase price of the mines. Chew was president and Clayton vice president of both the Mexico and Arizona corporations; Chew being also treasurer of the Arizona corporation. Raines was an officer of both corporations. The plaintiff Mexican-Pacific Mining Company is a corporation organized under the laws of Arizona, and is a citizen of that state as well as of Missouri. It duly purchased from its coplaintiff and took over the remaining 4 shares of the Mexican corporation, and still owns them. The first two installments of the purchase price of the mines, as well as of Chew's agreed payment to Clayton, were met; but Chew was unable to meet the third installment of either of these payments, and to avoid forfeiture of the mines obtained from Clayton a loan of 24,000 pesos to cover both items of indebtedness, and, as security for that loan, pledged, for Clayton's benefit, without the authority, knowledge, or consent of the Arizona corporation, the 6 shares of the Mexico corporation's stock held by the Arizona company. This indebtedness to Clayton was not paid, and, in 1910, he obtained possession of the pledged 6 shares of stock, assumed control of the affairs of the Mexico corporation and of the management and operation of the mines, and effected a reorganization of the Mexico corporation which, through a board of directors controlled by him, contracted, in 1915, to sell the mines to the defendant, Corrigan, for $200,000. The bill alleges that Clayton's possession of the 6 shares of stock in the Mexico corporation, and the control thereby obtained of its affairs resulting in the contract of sale to Corrigan, was fraudulent, and that Corrigan knew it; also, that the mines, when sold to Corrigan, were worth more than $1,250,000. The bill prays that defendant be temporarily and permanently restrained from attempting to make or consummate any propos-

ed purchase of the mining properties through Clayton or the Mexico corporation, and from receiving the title to the properties. The paragraph of the answer under which hearing was had raised the defenses of nonjoinder of a necessary party defendant, and of failure to state a case entitling to equitable relief. The present Mr. Justice Clarke, who heard the case, was of the opinion that Clayton, at least (and probably the Mexico company), was an indispensable party defendant, and for this reason dismissed the bill.

[1, 2] As was well said by Judge Clarke, the case presented is certainly an anomalous one. It is plain that, unless the case is in some way taken out of the usual rule, the bill was rightly dismissed; for Corrigan, the contract purchaser of the mines, would, on the face of things, clearly be entitled to demand that his vendors be made parties, for only so could he be protected as against them by a decree in plaintiff's favor. The Mexico corporation, which was the actual vendor, would thus be an indispensable party, and in view of the allegations made in the bill Clayton would seem equally so. The proposition that plaintiffs own all the capital stock of the Mexico corporation, and that thus the entity of the latter may be ignored, and the case treated as if there were no corporate existence, is sufficiently answered by the fact that it appears upon the face of the bill that those under whom defendant claims (and, impliedly, defendant also) are denying ownership and right of control in the plaintiff Arizona corporation of the 6 shares in question which constitute a majority of the capital stock of that corporation, and that a prime object of this suit is to establish such ownership in the complainant Arizona corporation.

Plaintiffs, however, attempt to avoid the effect of lack of parties defendant by alleging that the Arizona corporation has, without avail, exhausted every possible effort to secure a settlement between itself and Clayton respecting the 6 shares; that that corporation, in 1913, began suit in St. Louis against Clayton to recover their possession, and for an injunction restraining their sale, pledge, or other disposition, as well as the disposition of the mines, or any interest therein; that appellee was notified of the pendency of the St. Louis suit, and of plaintiffs' claimed rights, before he contracted for the purchase of the property; that the St. Louis case is still pending and at issue, but that testimony of witnesses in Mexico is needed before hearing can be had, and that such testimony cannot now be taken because of the suspension of all civil authority in Mexico; that Clayton and the directors of the Mexico corporation are all in Mexico, and beyond the jurisdiction of this court, and not amenable to its process, or to that of any other American court; that there are now in Mexico no courts having civil jurisdiction over transactions of this character, or in which plaintiff could obtain relief, either against Clayton or the directors of the Mexico corporation, and, moreover, that it is unsafe, by reason of the revolution there prevailing, to go to Mexico for the purpose of relief to plaintiffs; and they urge that if, for lack of necessary parties, the court below could not determine the ownership of the disputed shares, it yet has full power to hold matters in statu quo until appellant can litigate the question with Clayton in a court which has jurisdiction, as the St.

Louis court apparently has. Mallow et al. v. Hinde, 12 Wheat. 193, 6 L. Ed. 599.

Normally, plaintiffs' remedy respecting this mining property—situated as it is in a foreign country, and whose legal title and right of disposition are governed by the laws of that country—is to be found through the courts of that foreign country, and, before plaintiffs can obtain in the courts of this jurisdiction the extraordinary relief asked, their right thereto should be made clear.

[3] It may be that, if it affirmatively appeared defendant could not be injured by such temporary holding of matters in statu quo, the bill might be maintained to the extent of giving relief through a control of the defendant's person, temporary in character and as ancillary to the suit pending in St. Louis and to possible later proceedings in Mexico. This question, we are not called upon to decide, because it does not appear by the bill that defendant would suffer no injury from such temporary delay; on the other hand, it affirmatively appears by the answer, filed March 7, 1916, that defendant, under agreement of January 24, 1915, was to pay, on January 21, 1916, the first installment of the purchase price of $200,000, the remaining payments being distributed over a period of three years following January 24, 1915 (the last payment falling due on or before January 24, 1918), as well as an additional payment of $12,000 in monthly installments; that default in any one of the installments forfeits defendant's contract rights and all payments made thereunder; and that, when answer was made, defendant had met all the monthly payments, of $1,000 each, called for. The answer (which denied that plaintiffs' claims have any merit), by implication, at least, treats the unmatured payments as unpaid. Indeed, the bill alleges merely a contract of sale (a "promise to sell") to defendant. It is thus seen that the injunction, forbidding defendant to proceed with his purchase, might, because not binding upon his vendor, readily result in the loss of his rights through a cancellation of the option and the forfeiture of all payments made thereunder.

Moreover, there is nothing in the record furnishing any assurance that conditions will so change in the near future as to permit the effective prosecution either of the St. Louis suit or of new proceedings in Mexico, and thus that a mere temporary injunction against the carrying out of defendant's contract of sale would benefit plaintiffs. Indeed, if, as plaintiffs allege, defendant made his contract of purchase with knowledge of their claimed rights, they are not shown to be entirely remediless.

We think it clear that plaintiffs have not stated a case entitling them to relief here, in the absence of other interested parties.

The decree of the District Court must be affirmed.