# Lyon *v.* Foscue.

*Bill in Equity for Account and Settlement of Trust Estate.*

1. *Conclusiveness of decree on appeal.*—When this court, on appeal in a chancery cause, partly affirms, and partly reverses the chancellor's decree, and

[Lyon v. Foscue.]

remands the cause "for further proceedings not inconsistent with" the opinion filed, the chancellor is concluded by the decree of this court, and can not in any manner change that part of his former decree which was here affirmed.

2. *Duty and liability of trustee.*—Infallibility is not exacted of trustees: they form their best judgment in the light of existing facts, and, if they act in good faith, they are not responsible for results which could not have been foreseen by ordinary vigilance and prudence.

3. *Same.*—To relieve a trustee from liability for the failure to collect moneys which he might have collected, he must show something more than a simple mistake in the calculation of interest.

4. *Compensation of trustee.*—On the facts of this case, the trustee was held entitled, in addition to commissions on his annual receipts and disbursements to the tenant for life, to reasonable compensation for his services, trouble, and risk in collecting, investing, and managing the trust funds during the late civil war, when the responsibilities of his office were greatly increased by the anomalous condition of affairs, of which the court takes judicial notice.

5. *Solicitor's fees, and costs.*—This being the settlement of a trust, under a bill filed by the beneficiaries against the trustee, the litigation being protracted, and some of the contested items of account being decided against each party, the solicitor's fees and the costs were equally divided among the trustee, the beneficiary of the life-estate, and the remainder-men, one third to be paid by each.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 23d December, 1873, by Mrs. Mary Jane Foscue and her two children, Ellen and Frank L. Foscue, against Francis L. Lyon; and sought an account and settlement of a trust created by the will of Augustus Foscue, deceased, who was the father of Mrs. Mary Jane Foscue. The bequest creating the trust was in these words : " I give and devise to Francis S. Lyon, in trust for the use and benefit of my daughter Jane, the wife of Frederick Foscue, the following named negro slaves," naming them ; " for the sole and separate use, benefit, and support of my said daughter, for and during the term of her natural life, free and exempt from the control, possession, contracts, and obligations of her husband ; and at her death to go, and be equally divided among her children. I, moreover, for the further use, benefit, and support of my said daughter, give and bequeath to the said Francis S. Lyon the sum of fifty thousand dollars in cash, out of my estate ; to be by him as trustee invested in some safe and productive stock or stocks, or placed at interest on good security, as he may in his discretion deem best ; the interest on the same he shall collect annually, or the dividends at such times as they may accrue, and pay over the same to my daughter Jane, for her sole and separate use and benefit aforesaid, so long as she may live ; and in making such payments, the receipt of the said Jane to the said trustee shall be valid and binding, without her being joined by her husband ; and at the death of the said Jane, the principal of the said sum of fifty thou-

sand dollars shall by said trustee be settled upon and vested in the children of the said Jane."

Said F. S. Lyon was one of the executors of the testator's will, together with B. W. Whitfield ; and they both qualified as executors on the 27th May, 1861, being exempted by the will from giving bond.   On the 1st December, 1862, Lyon, as trustee, accepted from the executors, in payment of the legacy of $50,000, the promissory note of G. Breitling for $45,000, and the promissory note of Sledge & Compton for $1,080; the amount due on the two notes, principal and interest, being computed as equal to the legacy, with interest thereon from the testator's death.   Both of these notes were payable to the testator, and had been given for borrowed money.   The Breitling note was secured by a deed of trust on two plantations, or tracts of land, called the " Calhoun place" and the "Lyon place," with a number of slaves, which were conveyed to said F. S. Lyon as trustee, who was authorized to sell for cash on default being made in the payment of the note.   In December, 1865, the trustee took possession of the lands, and sold them at public outcry under the power contained in the deed, for one-third cash, and the balance in one and two years.   At this sale, James R. Jones became the purchaser of the "Calhoun place," at the price of $33.380, paying one-third cash, and giving his promissory notes for the residue, payable in one and two years, secured by a deed of trust on the land.   In January, 1868, Jones having become insolvent and absconded, Lyon took possession of the lands, and had them sold under the deed of trust, becoming himself the purchaser. . A material question in the case was, whether this purchase was to be considered as made for the benefit of the trust estate.   On the 15th December, 1873, the trustee filed his resignation with the register in chancery, and made a settlement of his accounts and vouchers as trustee.   The register allowed the account as stated by him, against the objections of Mrs. Foscue and her children, who thereupon filed the bill in this case, alleging that the trustee had failed to invest the legacy according to the directions of the will, and had failed to collect and pay over the annual interest; that he had no authority to invest any portion of the trust funds in the purchase of lands, as he claimed to have done, and that the trust estate was greatly injured by his neglect, mismanagment, and violation of official duty.   The trustee answered the bill, denying all the charges of waste, negligence, or other misconduct, and giving a detailed statement of all his acts and conduct in the managment of the trust estate.

The cause being submitted for final decree on pleadings

and proof, at the June term, 1875, the chancellor held, that the complainants were entitled to an account of the trust estate from the trustee; that the trustee was authorized to receive the promissory notes from the executors, in satisfaction of the legacy; that in the purchase of the "Calhoun place," under the facts proved, in the name of the beneficiaries, and for their benefit, the trustee acted in good faith, and within the line of his duty; and the purchase was ratified and approved, and an account ordered to be stated by the register. The complainants appealed from this decree, and brought the case to this court, where an opinion was delivered, at its December term, 1876, partly affirming, and partly reversing the chancellor's decree, as shown by the report of the case—*Foscue v. Lyon*, 55 Ala. 440-58. This court decided, as the report of the case shows, that the trustee was authorized to receive the notes in payment of the legacy, and was bound to exercise due diligence in their collection; that in continuing the investment, and collecting the interest as it accrued, he acted with due diligence; that if the interest was collected in Confederate treasury-notes, and perished on his hands without fault on his part, he was not responsible for the loss; that his purchase of the lands, for the benefit of the trust estate, was not to be treated as a permanent investment, which he had no power to make, but a temporary expedient to prevent loss to the estate, which was approved and affirmed; and that he was not chargeable on account of his failure to sell the lands, a few days after his purchase, on the application of Siddons and others to purchase them from him. It was further held that the personal representative of Augustus Foscue, deceased, one of the children of Mrs. Mary Jane Foscue, was a necessary party to the bill; and the cause was remanded, "for further proceedings not inconsistent with this opinion."

After the remandment of the cause, the personal representative of said Augustus Foscue was brought in as a party by petition and amendment; and a special register having been appointed, at the June term, 1877, the chancellor made a decretal order, containing the following directions: 1. That F. S. Lyon, as trustee, "shall be charged with the *corpus* of the trust fund, to-wit, $50,000." 2. That this fund shall bear interest from the probate of the testator's will. 3. That the interest arising from the *corpus* of the trust fund, year by year, shall be placed in a separate column, and be kept distinct from the *corpus*. 4. "That all Confederate money that died on the hands of trustee, without any fault on his part, shall be credited to him in the statement of the account; and in determining whether said money perished on his

[Lyon v. Foscue.]

hands without fault on his part, the special register may hear testimony, and consider all the facts and surroundings." 5. That the special register shall allow no disbursement as a credit, unless supported by a proper legal voucher; and if it should appear that settlements have been made by the trustee with the Probate Court, the special register will entirely disregard them. 6. That, inasmuch as the Probate Court had no jurisdiction over the trust, "all fees paid on such settlements to the court, or to attorneys, shall not be a charge against the trust fund, but shall be borne by the trustee." 7. That former settlements made with the register, if not properly advertised and conducted, shall be disregarded by the special register, and disbursements then allowed shall be proved. 8. That the trustee "shall be charged with all interest on the *corpus* with which he may be shown to be properly chargeable, as it was duty to lend out the trust funds, and he could not convert himself into its mere custodian, burying it in a napkin." 9. "If it should appear that the trustee failed to loan out any part of the *corpus* of the trust fund, the special register will report the amount not put out at interest, and the proof on the point; also, whether or not Mrs. M. J. Foscue should be charged interest on such part of the *corpus* as she may have received from the trustee, where the failure of the trustee to loan out the *corpus* diminished her annual life-estate, and brought her in debt to the trust fund, without fault on her part." 10. That the rents collected from the "Calhoun place," after the purchase by the trustee, "shall stand for and represent the interest upon the *corpus* of the amount due from James R. Jones to the trust fund, up to the resignation of the trustee." 11. That the special register shall state in his report what amount of money Mrs. M. J. Foscue has received from the trustee, over and above the annual interest realized, or which, by due diligence, the trustee might have realized from the investment of the trust funds. 12. That the account shall be stated *de novo*, without reference to any former report made in the cause. 13. "That the trustee be charged with the trust fund, $50,000, from the day on which he received it as trustee, subject to be abated to the extent of any Confederate money that perished on his hands without fault on his part; but the account shall clearly show these facts, together with the proper dates." 14. That the register append to his report an abstract of the proof on any point that may be contested before him, and on which either party may except to his ruling. 15. That the register report what would be a reasonable fee to be allowed to the solicitors of the trustee in defending this suit, and whether it should be

paid by the owner of the life-estate, or by the remainder-men, and whether this suit was commenced before or after the resignation of the trustee.

To the report of the special register under this decretal order, made to the chancellor in July, 1877, exceptions were filed by both parties. The defendant's exceptions were—1st, the overruling of his motion for an allowance of $2,750 as counsel fees; 2d, the refusal to allow him more than $1500 as counsel fees; 3d, the refusal to allow him commissions as compensation for his services as trustee; 4th, the refusal to allow him any compensation for his services, trouble, and responsibility as trustee; 5th, the overruling of his motion for an allowance of five per cent. commissions on amount of *corpus* of trust fund received by him, and two and a half per cent. on amount disbursed. The complainant's exceptions were—1st, the allowance to the trustee of $4,842.75, with interest thereon, "being amount of Confederate money received by him, less expenditures, &c., on the ground that the same had perished on his hands without fault on his part;" 2d, the action of the master in charging the trustee with only the amount of interest actually due on the Breitling note when he received it, instead of the amount actually collected by him; 3d, his action in charging Mrs. Foscue, in her account with the trustee, "with the difference between the amount paid by him to her during the year 1867, and the amount of interest actually collected by him that year," and his similar ruling in the account for each successive year; 4th, charging Mrs. Foscue with the sum of $3,196.47, "as paid on the 6th December, 1869, as part of the purchase of the Calhoun plantation;" 5th, the refusal of the master to continue the account, year by year, to the 6th July, 1877, the day on which said account was closed;" 6th, the mode and manner of stating the account by the master, and the charges and credits therein contained, so far as shown by account No. 1 relating to interest," specifying the particulars; 7th, the statement of the account in reference to the amount received on the Breitling note in Confederate money, by which the *corpus* of the trust fund was reduced to $45,157.25; 8th, "in reporting $8,161.67 of *corpus* paid Mrs. Foscue, as being an overpayment." These various exceptions were stated in different forms, and with great detail, accompanied with the reasons urged in favor of them; but these matters can not be condensed within the limits of this report, and are not necessary to an understanding of the opinion of the court.

The cause being again submitted to the chancellor, on the report of the special master, and the several exceptions

thereto filed by both parties, under an agreement in writing that he might render his decree in vacation, he delivered a most elaborate opinion, covering seventy-five pages of the transcript, accompanied with the following decree, which was rendered on the 17th, August, 1877 :

"1. It is ordered and decreed, that the exceptions filed by the defendant to the report of the special master be, and they are hereby, overruled and disallowed ; and it is ordered that the matter of fixing the fees of defendant's solicitors is reserved, until such time as the accounts shall have been confirmed by this court.

"2. It is ordered and decreed by the court, that the exceptions filed by complainants to the accounts, as stated before the special master, and to his report accompanying the same, be, and they are hereby, sustained.

"3. It is ordered and decreed by the court, that S. H. Sprott be, and he is hereby, continued as special register and master, to state the accounts necessary to be taken in this cause.

"4. It is ordered and decreed by the court, that F. S. Lyon, trustee as aforesaid, shall account to the tenant for life, M. J. Foscue, for the sum of $3,196.27-100, alleged to have been invested in the Calhoun land ; and that the said trustee shall take an interest, to the extent of said sum of $3,196.27-100, in the Calhoun land, and bear his proportionate share of the sale expenses, taxes, and improvements, as well as draw his proportionate share of the rents and profits of said land, since the sale made in December, 1869.

"5. It is declared and decreed by the court, that F. S. Lyon, trustee as aforesaid, had no legal right to receive Confederate money, it not being a 'legal tender' in this State by virtue of any law in force in 1863 ; and that he be charged with, and account for all sums received by him, as trustee, in such currency.

"6. It is declared and decreed by the court, that, inasmuch as F. S. Lyon, trustee as aforesaid, has deposed and stated that he could neither loan nor invest the Confederate notes or money collected by him in May, 1863, he is justly liable to account for said sum, upon the ground that it was his duty to have received a thing of value in satisfaction of debts due the trust fund.

"7. It is declared and decreed by the court, that F. S. Lyon, trustee as aforesaid, had no right, under the terms of the trust, to loan out the annual interest upon the capital or *corpus* of the trust fund ; and that he was guilty of a breach of trust, in loaning out the interest to Alf. and Samuel Breitling, on January 10, 1863, upon their individual due

bill; and that he is justly liable to account to the tenant for life, in United States currency, for the interest so lent by him, and received in May, 1863, in Confederate treasury-notes or money.

"8. It is declared and decreed, that as the aforesaid trustee was guilty of *crassa negligentia*, in computing the interest on the G. Breitling note for $45,000, for more than the legal time which was shown by the indorsement placed by Augustus Foscue on the back of said note, to be from March 1, 1861, the said trustee is liable to make good to the trust fund the loss of $1,304.60, thereby occasioned, and that he shall be charged with such sum in U. S. currency, as, but for said *crassa negligentia,* the said sum could have been collected, in 1865, in Federal currency, from the estate of G. Breitling, which was amply able to pay said sum at that time.

"9. It is declared and decreed by the court, that in case F. S. Lyon, trustee, received from G. Breitling's executors *notes upon third parties,* in lieu of the cash due from them, after the sale of the mortgaged property, he is not entitled to be credited with any fees or costs for collecting said notes so taken, as it was his duty to have received *cash* from said estate of G. Breitling, or to have reclaimed the fees and cost of collecting said notes from said estate.

"10. It is ordered and decreed by the court, that F. S. Lyon, trustee as aforesaid, had no legal right to reduce the *corpus* of the trust fund, by making repairs and improvements on the Calhoun place, which he held for a *temporary purpose;* and that he is not entitled to a credit for moneys so laid out by him, without authority by the terms of the trust, or of this court.

"11. It is ordered and decreed, that all moneys, except $3,500 paid October 27, 1868, to the tenant for life, in excess of the interest on the trust fund, are clearly shown to have been paid from mistake or ignorance of law, and voluntarily, and without solicitation, fraud, or imposition, on the part of the tenant for life; and that this court cannot compel said tenant for life to repay such moneys, as the obligation to do so is enforcible only in *foro conscientiæ.*

"12. It is declared and decreed by the court, that any promise made by the tenant for life, in her answer to the cross bill of the trustee, to repay and account for the *corpus* paid her, was executory, and revocable at any time, and is not enforcible by a decree of this court, however strong the obligation of repayment may be in *foro conscientiæ.*

"13. It is ordered and decreed, that M. J. Foscue is justly accountable to the trustee, F. S. Lyon, for the sum of $3,500, paid 27 October, 1868, together with interest; she having

been aware said sum composed a part of the *corpus*, and having agreed in writing to refund the same.

"14. It is ordered and decreed, that proof may be made before the special register, as to whether or not said trustee could, by the use of due diligence, have collected the first note of J. R. Jones for the purchase-money of the Calhoun place, from the crops grown on the place, or from the personal security, M. W. Creagh; and as to whether said trustee is not bound to make good to the trust fund all such moneys as he might, by reasonable diligence, have collected at the maturity of said note, and in consequence of his neglect to sue on said first note, or to attach the crops grown on the place.

"15. It is declared and decreed, that the trustee, F. S. Lyon, was properly charged by the special register on so much of the *corpus* of the trust fund as he kept on hand, uninvested, and that he be so charged in any future account that may be stated by said special master.

"16. It is ordered and decreed by the court, that, in stating said account, no interest shall be charged on the commissions due the trustee each year, and that no annual rests be allowed in computing interest.

"17. It is ordered that all interest, whether upon debits or credits, shall be computed on each amount, by itself, and placed immediately under the particular item, so as to show each amount separately.

"18. It is declared and decreed by the court, that, in case the trustee should be decided to be entitled to a credit for Confederate money, he is only entitled to the amount claimed in his account of 1873, viz., $3,345.38; provided, the $1,304.10 be not included in said sum, as he is chargeable with said $1,304.10.

"19. It is ordered and decreed, that the accounts stated by the special register do not conform to the directions heretofore given by this court, as to how they should be stated, and that, consequently, a new reference is made necessary to the said special master, in order to a correct statement of the same.

"20. It is ordered and decreed by the court, that in executing the reference hereby ordered, the special register shall follow strictly the instructions and directions contained in this interlocutory decree, and shall not hear any testimony, except on the matters expressly pointed out in this decree.

"21. It is ordered and decreed by the court, that no credit for the disbursement of funds shall be allowed by the special register, unless it be supported by a legal voucher, and that the *receipt* of the party to whom money is alleged to have

been paid is necessary to be filed by the trustee, before he can be allowed a credit therefor.

"22. It is ordered and decreed by the court, that the account of the *corpus* shall not contain any matters of interest, on either side of said account, and that the trustee shall be credited with $22,568.66, and the expenses of sale for the Calhoun place, and with no other reductions of said *corpus*, from the time that he took charge of it.

"23. It is ordered and decreed by the court, that the accounts stated by the special master, in all matters and items not specifically pointed out as erroneous, in and by this decree, shall be transferred by the special master to his new accounts, just as they stand on the accounts now set aside and referred back to him.

"24. It is ordered and decreed by the court, that, inasmuch as the trustee is under no bond as such, and as the account, as stated by the special register, shows a balance of trust funds still in his hands, on which interest is due from 1873, said trustee, in case he prosecutes an appeal to the Supreme Court, shall file with the register a good *supersedeas* bond, in the sum of fifteen thousand dollars."

On the re-statement of the account by the special master, under this reference, three exceptions were reserved to his rulings by James M. Curry, as administrator of the estate of Augustus Foscue, deceased, and eighty exceptions were reserved by the trustee; and on the coming in of his report, the chancellor, on the 3d November, 1877, rendered the following decree, in connection with a written opinion, in which he reviewed the whole case, and gave his reasons for the several conclusions announced in his decree:

"1. It is ordered, decreed, and adjudged by the court, that the exceptions filed by the defendant to the account and report, from 1 to 80 inclusive, are not well taken, and are hereby overruled and disallowed.

"2. It is ordered and decreed, that the trustee is not chargeable with compound interest, and the same must be corrected, if done.

"3. It is ordered and decreed, that the trustee is entitled to full commissions, as fixed by law, where he has not heretofore received them; but, as he has not made annual settlements, such commissions ought not to be allowed annually, but should be placed in bulk in the account.

"4. It is ordered and decreed, that all the credits on the present account, together with the vouchers for State and county taxes for 18—, shall be allowed, as of course, in any future account that may be stated of said trusteeship.

"5. It is ordered and decreed, that the trustee is entitled

to one-third of a reasonable fee for his solicitors, but not to exceed $650, to be paid out of the trust fund.

" 6. It is ordered and decreed, that J. M. Curry, administrator of Augustus Foscue, deceased, not having been a party nor a privy to this suit or proceeding in June, 1875, is not bound by the original decree rendered in this cause at the June term, 1875, and is entitled of right, at this stage of the cause, to have the aforesaid decree of 1875 set aside as to him.

" 7. It is ordered and decreed by the court, that exceptions —— filed by said Curry, administrator of Augustus Foscue, are well taken, and are hereby sustained.

" 8. It is declared and decreed, that the purchase of the Calhoun plantation, by the trustee, F. S. Lyon, is shown by the facts and the pleadings to have been a permanent investment of the trust fund, contrary to the terms of the trust, and without authority of law.

" 9. It is declared and decreed, that F. S. Lyon, trustee, kept off purchasers, and created the necessity for himself bidding in the Calhoun land, by requiring the purchase-money, amounting to $26,800, to be paid in cash on December 10, 1869, when no necessity or valid reason existed for his imposing such restriction and embargo on the sale.

" 10. It is declared and decreed, that F. S. Lyon, trustee, *converted* the purchase of the Calhoun plantation into a permanent investment, by his refusal of the offer, made shortly after his said purchase, to take the same off his hands at his bid, paying one-third cash, and giving a mortgage for the residue of the purchase-money.

" 11. It is declared and decreed, that F. S. Lyon, trustee, converted the purchase of the Calhoun plantation into a permanent investment, contrary to the terms of the trust, by failing for four years to offer said plantation for re-sale, as was his duty under the terms of the trust, forbidding the investment of the trust fund in real estate, and by failing to report said purchase and ask for a ratification and directions as to its management and sale, as a temporary investment of the trust fund.

" 12. It is declared and decreed, that the trustee aforesaid converted the purchase of the Calhoun plantation into a permanent investment of the trust fund, contrary to the terms of the trust, and without authority of law, by erecting and making permanent improvements upon said plantation, out of the trust fund, without any order of the proper court, as well as by treating and dealing with said plantation as if it was a permanent investment of the trust fund.

" 13. It is declared and decreed, that the trustee, by his

[Lyon v. Foscue.]

conduct, converted the purchase of the Calhoun plantation into a permanent investment of the trust fund, contrary to the terms of the trust, and without authority of law.

"14. It is declared and decreed, that the neglect of the trustee to collect by legal process the first note of J. R. Jones when it fell due, and his giving time and indulgence to said Jones, created the necessity, if any such existed, for the purchase of the Calhoun plantation for the trust fund.

"15. It is decreed that the facts in the cause show that no necessity existed for the trustee to purchase the Calhoun plantation, even temporarily, to save a loss to the trust fund, and that in purchasing without such necessity, the aforesaid trustee made a permanent investment of the trust fund in real estate, contrary to the terms of the trust, and without authority of law.

"16. It is ordered and decreed by the court, that special master Sprott is entitled to a fee of $130, in addition to previous allowances, to be paid out of funds in the hands of the receiver of the trust fund; and that such receiver shall pay the said sum out of any trust funds he may have on hand; and that the receipt of said special master Sprott shall be and constitute a proper voucher for said receiver in his settlement of his said receivership.

"17. It is ordered and decreed that, in any future account that may be stated, the trustee shall take the Calhoun plantation, and the rents upon it since December, 1869, and account to the complainants for the sum of money invested in the Calhoun plantation, and interest thereupon, without, however, compounding such interest.

"18. It is ordered and decreed that, in the event of an appeal being prosecuted by the defendant, as he is under no bond as trustee, that the *supersedeas* bond be, and the same is, fixed at the balance reported by special master Sprott, in his last report, due from said trustee to the beneficiaries.

"19. It is ordered and decreed, that the report under consideration be, and the same is set aside, and a new one ordered to be made in conformity to this decree, by S. H. Sprott, Esq., who is re-appointed special master in this cause."

The defendant now appeals from this decree, and here assigns as error the two decrees rendered, respectively, on the 17th August, and the 3d November, 1877, together with each separate ruling of the chancellor in the instructions to the special master, and in his rulings on the exceptions to the two reports of the master; the assignments of error being *one hundred and forty-eight* in number.

PETTUS & DAWSON, and W. E. & R. H. CLARKE, for appellant.

W. W. DUGGER,* contra.

STONE, J.—This case was before this court, and was decided at the December term, 1876. We then very explicitly laid down rules, which were intended to settle, and did settle, all the material questions in this cause, except those hereafter stated. In some respects, we reversed the ruling of the chancellor, and declared the principles which should govern in the settlement of those questions. In other respects, we affirmed the chancellor's rulings. We reversed the decree of the chancellor, and remanded the cause, "for further proceedings not inconsistent with this [that] opinion." All the principles we declared in that cause, we intended should be rules for the after conduct of the litigation. We intended to make, and thought we had made, ourselves understood. We did not expect our rulings to be disregarded, and the same questions we thought we had settled, to be returned upon us, not only with our own directions overruled, but with that part of the chancellor's decree which had been affirmed by us, itself reversed by the same chancellor who pronounced it. With limited exceptions, this court has appellate jurisdiction only; and it is, as its name imports, a Supreme Court, or court of last resort. It is clothed with "a general superintendence and control of inferior jurisdictions." We regret the necessity we feel ourselves under of announcing this wholesome principle, which seems not to be understood.—Johnson v. Glasscock, 2 Ala. 519. We adhere to our former decision in this cause, and hereby reverse all that is found in this record, inconsistent therewith. On these questions, we deem it unnecessary to elaborate this opinion. The chancellor seems to have fallen alike into errors of fact and of law.

In our former decision, we approved the trustee's investment of the fifty thousand dollars, pecuniary legacy, in the Breitling note and mortgage, and the other claim mentioned. The civil war was then raging, and, viewed from any standpoint, we do not think a wiser or safer investment could have been made. So, we approved the sale to Jones, and the subsequent sale and purchase of the lands for the benefit of the trust estate. We think it is shown, with reasonable certainty, that the trustee's purchase then appeared to be the best that could be done for the interest of the beneficiaries.

---

* The arguments of counsel are very full, and can not be condensed within suitable limits for publication, being mainly addressed to the voluminous matters of account.

Infallibility is not exacted of trustees. They must form their best judgment in the light of existent facts, and, if they act in good faith, are not responsible for results which ordinary vigilance and prudence could not foresee. Others, it is shown, were willing to give near the same sum; but the trustee believed the lands worth the entire debt, and he was not willing they should be sold away from the beneficiaries, at a sum less than the entire demand. It is not shown that others offered to take the bid off his hands, to be paid in three installments. Lyon purchased on the 6th December. Five days afterwards, on the 11th, title was made to him for the benefit of the trust estate. A week or two—(more than five days)—after the sale and purchase, Siddons and others had an interview with Lyon, for the purpose of proposing to take the purchase off his hands, to be paid in the three installments. Lyon informed them he had let the lands to rent for the next year. Thereupon, the negotiation ceased, and it is not shown whether any offer was in fact made. Before the interview, as far as we can learn, Lyon, in ignorance of their wish to purchase, had leased the lands to Buford, and thus placed it out of his power to deliver immediate possession. The witness Selden, one of the negotiating parties, testifies that the interview took place about a week after the sale. The language of this witness is: "I knew of no agreement, or conclusion. The reason it was not carried out was, that the land had been rented to one Buford, before we could get an interview with Mr. Lyon. That was my understanding." Mr. Siddons, another of the negotiators, says the interview was a week or two after the sale. His language is, "As soon as we learned that Mr. Lyon had rented the place, we abandoned all idea of purchasing." Dr. Dugger, the other proposed purchaser, was not examined. Mr. Lyon, in his deposition, after stating that Messrs. Siddons, Dugger, and Selden, had reminded him of the interview, says, "My recollection as to these facts is not distinct." He neither proves nor disproves that these parties offered to take his purchase off his hands. We have said this much, because much stress is laid on the fact that Lyon refused to allow these parties to become the purchasers of the Calhoun plantation, and thereby, as it is contended, injured the trust estate very seriously.

The present trust originated in 1861. It came to the hands of the trustee in 1862. Our civil war was then raging with terrible earnestness. The blockade cut off intercourse from without, while the value of all stocks and moveables within Confederate lines was dependent on the result of the gigantic struggle. The wisest could then have found no

safer investment, than a personal loan, secured by mortgage on valuable real estate. Slaves were then also considered good security; for the Southern people, in their zeal and heroic hopefulness, generally believed we would achieve a separate Federal government. The philosophic and calculating could not fail to know that all stocks and attainable personal investments hinged on the fate of the war. Nothing promised so good and lasting security as a pledge of real estate. Surveying the surroundings, we think Mr. Lyon elected the best possible investment of the trust fund confided to him. The war ended, and the star of Confederate hope went down forever. We had been the wealthiest agricultural people in the world. We soon came to be numbered among the poorest. Two and a half to three thousand millions of personal property, deemed, at the time, the most valuable of Southern acquisitions, were struck down by an edict as relentless as the torch of Omar. Unprecedented shrinkage of values supervened, and affluence gave place to gaunt poverty. Viewed from any period since the war, results have vindicated the wisdom of Mr. Lyon's choice; and few trust funds have been carried so successfully through the ordeal of fire, through which it was doomed to pass. Not a shadow of suspicion rests, or is attempted to be cast, on the purity and integrity of the trustee, during the long and trying period of his ministration; not a semblance of self-seeking, or personal aggrandizement. The law deals generously with trustees, who have acted in good faith. " Well done, good and faithful servant," is the language of Him "who spake as never man spake."— *Gould v. Hayes,* 19 Ala. 438; *Henderson v. Simmons,* 33 Ala. 291.

In the chancellor's decretal order of June 21, 1877, he followed substantially the rulings of this court, when this case was formerly before us. We find nothing in that order upon which we consider it necessary to comment. So, we approve the report of the special register, first made, with the exception of certain points hereafter considered, and, to the extent named, confirm the same. The decrees of August 17, 1877, and of November 30, 1877, together with the instructions to the special register of the first named date, were unauthorized, and are reversed and annulled.

Under the terms of the trust, it was the duty of the trustee to collect the interest annually, and pay it to Mrs. M. J. Foscue. This he attempted to do. In the first calculation of interest, January 10th, 1863, he collected on the Breitling note near four thousand dollars more than was then due, of accrued interest. This collection was made in Confederate money, and part of it was paid to Mrs. M. J. Foscue, on her

claim of interest on the fifty thousand dollars trust fund. If the whole payment then made in Confederate money ·be allowed as a credit on the note, the effect will be to reduce the principal to between forty-one and forty-two thousand dollars, as of January 10th, 1863. Taking this as a basis of calculation, and allowing credit for all the payments afterwards made, and accounted for by Mr. Lyon, the balance of the note would be fully realized, with a probable *residuum* of more than three thousand dollars, overpayment. On the other hand, if we treat the Confederate payment of January 10th, 1863, as only paying the interest up to that time, and leaving forty-five thousand dollars of principal then due on the Breitling note, and drawing interest from that date, then the payments afterwards made and accounted for by the trustee fell short of paying the note in full by about the sum of $2,063 at the time of the last payment, 23d day of February, 1870. In making these calculations, we have taken the credits, both as to amounts and dates, from the admission of the parties, made and found in connection with the testimony of Sharpe, the expert, given, or offered, on the last trial before the special register. The additional collections, mentioned in the testimony of Sharpe, are also set forth in the report of the trustee, sworn to and filed December 15th, 1873, and made part of the evidence in this cause.

In the Confederate collection of January 10th, 1863, it was the intention of the trustee to collect the accrued interest on the Breitling note, and only the accrued interest. By an oversight, or mistake, for which no excuse can be offered which meets the requirements of the law, he collected more than the interest, and therefore more than he intended to collect. If he had not made this excess of collection, he would have realized, in good money, the balance of the note —some $2,063—as of 23d day of February, 1870. This entailed a loss of about $1,208 in the *corpus* of the trust fund, and the residue of the said sum of $2,063 in the interest collected in good money. While not a shadow of suspicion is cast on the personal uprightness of the trustee, the law exacts of him more than purity of purpose. He must bring to the service diligence ; that degree of care and diligence, which an ordinarily prudent man bestows on his own affairs. Tested by this standard, the trustee can not be pronounced legally blameless in the loss of this part of the trust fund, and he must account for it.

But, with watchfulness and much prudence, he carried this fund through the trying ordeal of our late civil war. In this, as we have shown, he performed a hazardous trust, and he was necessarily put to trouble, and required to exercise

skill, first, in collecting the Breitling and D. Compton claims, and, second, in the suits and collections from Jones, the purchaser of the Calhoun plantation. These, together with the necessary account and settlement of the trust, he is entitled to have considered in the adjustment of his accounts. He has been allowed commissions for receiving and disbursing the interest on this fund. He has had no allowance for receiving, carrying and settling the *corpus* of the trust. Without further embarrassing or delaying this litigation, we think a proper allowance to be made the trustee in this case is about the sum we have shown was lost, by the error committed . in calculating interest. We therefore set off one against the other, and adjudge that neither be noted in the account.

The balances found and reported by the register, included interest up to the 15th day of December, 1873. There was . then due from the trustee, of the *corpus* of the fund, $13,665.03. And there was due from Mrs. Mary J. Foscue, to the trustee, for overpayment to her, the sum of $8,161.67. These are to be the *dala* of the final decree, subject to the changes in their several sums, to be produced by the result of the account for professional services, &c., hereinafter ordered. This simplifies the account, and the final disposition of this cause, so that it will be difficult to err in the consummation. We shall hereafter show, there is but a single question left open, and that a *quantum meruit*, to be determined on proof. And if the sum paid to the register by Mr. Lyon, when he tendered his resignation, has not been included in the former account, or he has not otherwise had the benefit of it, the special register will allow that to the trustee also. We have not been able to determine whether this has been allowed or not.

In the conduct of this litigation, many claims have been preferred against the trustee, which have been disallowed. Some have been allowed. Counsel fees and costs have necessarily been incurred in the very severe litigation to which this settlement has been subjected. Some errors of claim have been committed on each side ; a decided majority on the side of complainants. We think the compensation to the trustee's solicitors, and the costs in the court below, should be divided into three parts ; one-third to be paid by Mary Jane Foscue, one-third by the remaindermen, and the remaining third by the trustee, Lyon. We feel, however, unable to determine, in the present state of the record, what should be a proper allowance to the solicitors. It should be a reasonable and customary charge for the services rendered. Since the testimony was taken, bearing on that question, and

[Lyon v. Foscue.]

since the report of the register thereon was made, a second laborious and protracted contest has been had before the register, and a second appeal to this court has been rendered necessary. These services should enter into the account of solicitor's fees. We order a reference to the special register on the single question of a proper allowance for the services of the trustee's solicitors; and in taking such account, the register will be allowed to consider all the testimony taken, bearing on that question, and any other legal evidence that may be offered; and he may re-examine witnesses heretofore examined, if desired. One-third of the sum he may so find and report, he will deduct from the balance of the *corpus* of the trust fund, found in the hands of the trustee, and one-third he will add to the balance of overpaid disbursements made by the trustee to Mrs. Mary Jane Foscue. He will take as the basis of this part of his report, the balances found and reported by the special register, filed of date June 5th, 1877; and when those balances are thus corrected, and interest computed to the coming in of the report, he will report his findings to the Chancery Court, to be there acted on by the chancellor, as other reports made to him are.

When these balances are thus ascertained by the report of the register and its confirmation, then, if Francis S. Lyon gives an order to Ella Foscue, F. L. Foscue and James M. Curry, administrator of Aug. Foscue, for the balance found due from Mary J. Foscue—the order to be drawn on Mary J. Foscue—the balance found against the trustee of the *corpus* of the trust fund is to be credited with a corresponding sum; and the balance found against the trustee, after allowing this credit, is to be the decree in favor of the remaindermen against the trustee. This under the agreement filed of record June 19th, 1877. This is the sole question left open for decision by the chancellor, in accordance with the rules above declared.

Let the costs of this appeal be paid by the appellees, and the costs of suit in the court below be divided into three equal parts, and taxed as above directed.