178 So. 54

**JOHNSON et al. v. LONG et al.**

**6 Div. 194.**

Supreme Court of Alabama.

Dec. 16, 1937.

Rehearing Denied Jan. 20, 1938.

284

D. D. Patton, of Carrollton, and Foster, Rice & Foster, of Tuscaloosa, for appellants.

Verdo W. Elmore, of Gordo, and Jones & Dominick, of Tuscaloosa, for appellees.

KNIGHT, Justice.

Appeal by M. Johnson, as trustee, and the United States Fidelity & Guaranty Company, his surety, from a decree of the circuit court of Pickens county, in equity, charging the said Johnson, on the final settlement of his trusteeship with an item of $1,800.42, representing one-third of the purchase price of certain lands upon which the trustee held a mortgage, for the benefit of the trust estate.

For a full understanding of the conclusions we have reached in the case, a statement of some of the salient facts, which lead us to our conclusion, is necessary.

The appellant Johnson was appointed by a decree of the circuit court of Pickens county trustee for Joe Reed Long, under the last will and testament of J. E. Stewart, deceased. This appointment was made on April 12, 1924, and appellant United States Fidelity & Guaranty Company became the surety on the bond of said trustee, to secure the faithful performance of the duties of the trust.

Johnson entered immediately upon the discharge of his duties as such trustee, and had entire management and control of the trust estate up to December 31, 1935, when he resigned the trust, and filed his account and vouchers for a final settlement thereof. By the report of this trustee, filed in the cause on January 2, 1936, it was made to appear that Joe Reed Long was the beneficiary for life of the trust property involved in this proceeding, and Joe Reed Long and Mary A. Long (minor children of said Joe Reed Long) were the beneficiaries in remainder, after the death of said Joe Reed Long.

It appears that on his appointment and qualification as such trustee, the said Johnson came into possession of the assets of the trust estate, and included among the assets was an indebtedness due the estate by T. E. Stewart in the sum of $8,000, and which was secured by a mortgage, executed by said T. E. Stewart, and his wife, on certain real estate belonging to said T. E. Stewart.

On September 29, 1929, the mortgage of Stewart and wife remaining wholly unpaid as to the principal sum due, the said trustee filed his petition in the circuit court for permission to allow the mortgagors to sell the properties conveyed by the mortgage, the sale to be made in accordance with, and pursuant to, the terms of a written agreement which the trustee had made with the mortgagors. In this agreement, which was made a part of the trustee's said petition, it was stipulated that the property should be sold at public outcry by Britt Davis Auction Company, in lieu of foreclosure; that the mortgagors were to execute deed or deeds to the purchaser at such sale; and that the said Johnson, on receipt by him of the proceeds, or so much of the proceeds as might be necessary to pay said mortgage, was to execute a "release from the said mortgage of said property so sold." The agreement further provided: "It is expressly agreed and understood that this agreement shall be binding only as and when the same is approved by the Judge of the Circuit Court of Pickens County, Alabama, and he has entered his decree authorizing the said M. Johnson as such trustee to carry out said agreement."

There was also attached to and made a part of the petition a copy of the contract between the mortgagors and the Britt Davis Auction Company, in and by which it was stipulated that the terms of said sale shall be: "Cash less 2%, or, at purchaser's option, one-third cash on day of sale and balance due in 12 months and 24 months, in equal payments; deferred payments to be secured by mortgage."

In the third paragraph of the petition it is stated: "Petitioner has heretofore agreed that said land may be sold as stipulated in said contract, in lieu of foreclosure, if such action on his part is ratified or authorized by this Honorable Court."

With the petition, and the two agreements before it, the court granted the petition, and authorized the sale upon the terms and conditions stated in the petition, and entered a decree with the following directions to the trustee:

"It is therefore ordered, adjudged and decreed by the Court that the lands in said petition described be sold in accordance with said petition and that, when the proceeds of said sale, or so much thereof as may be necessary to pay the mortgage indebtedness held by the petitioner against said land shall have been delivered to petitioner that he be and hereby is authorized, and directed to release from the operation of said mortgage any and all of such lands so sold.

*"It is further ordered, adjudged and decreed that should the proceeds of such sale be insufficient to pay in full the mortgage indebtedness so held by this petitioner against the said T. E. Stewart and wife, Elizabeth B. Stewart, that petitioner be and hereby is authorized and directed to proceed against T. E. Stewart and Elizabeth B. Stewart for the balance found to be due."* (Italics supplied.)

It appears from the testimony of the trustee, given ore tenus before the court at the hearing, on final settlement, that after the rendition of this decree, the mortgagors and Britt Davis Auction Company proceeded to offer the property for sale; the trustee being present at the time and place. They succeeded in selling two pieces of the property upon the terms and conditions set forth in the contract of sale, which had been approved by the court, viz., one-third cash and the balance secured by mortgage, payable in twelve and twenty-four months in equal installments. No contention has arisen over the sale of these two pieces of property. But when the other or remaining piece of property was offered for sale, there appeared no bidder willing to buy the property at a satisfactory price or bid. Thereupon, the sale was recessed for a short while. A Mr. Griffin, who was present, and interested in this piece of property, stated he would like to have it, but he did not have the money to pay for it at that time, but could pay for it on January 1st, as he had some money coming to him from a certain named estate. Thereupon, Mr. Johnson, the trustee, told Mr. Griffin that if he would bid on the property up to at least $5,000, that he, Johnson, would carry it for him, or a part of it, until the first of January. "That was the way the sale was made," using the words of Mr. Johnson. These facts appear from the testimony given by Mr. Johnson on his final settlement.

It further appears that Mr. Griffin bid in the property for the sum of $5,401.26, no part of which was paid in cash. That following his purchase, Mr. Stewart and wife, mortgagors, executed to Mr. Griffin a deed for the property, reciting consideration of $5,401.26; that Griffin then executed a mortgage back to Mr. Stewart,

reciting that it was given to secure an indebtedness of $3,600.84, *"for balance of the purchase price of the property hereinafter described,"* which sum is evidenced by the two promissory waive notes of the parties of the first part." Each of said notes was payable in the sum of $1,800.42, the first, on October 10, 1930, and the second note on October 10, 1931, with 8 per cent. interest. Thus it appears that the mortgage did not secure the remaining portion of the consideration price, which Mr. Johnson had agreed with the purchaser, Mr. Griffin, to carry until January 1, 1930. These two notes and mortgage Mr. Stewart transferred and assigned to Mr. Johnson, as trustee. With the sales concluded, counting the purchase of Mr. Griffin at $5,401.26, there was left a balance still due on the original mortgage indebtedness of Mr. and Mrs. Stewart of $164.92, and this amount Mr. Stewart paid to the trustee. So the original mortgage stood paid and discharged.

In addition to the two notes, in the sum of $1,800.42 each, which were executed by said Griffin, purchaser, to said T. E. Stewart, and which were secured by the above-mentioned mortgage, Griffin on the same day executed a third note for $1,800.42, payable January 1, 1930, and this note was made payable to "M. Johnson, Trustee," and accepted by him, and was wholly unsecured, and was executed according to the previously-mentioned arrangement between Mr. Johnson and Mr. Griffin, by which Mr. Johnson agreed to carry a part of the purchase price until January 1, 1930.

With the sales thus concluded, Mr. Johnson, as trustee, on March 24, 1930, filed his account for partial settlement of his trusteeship. In this account the trustee listed the items going to make up the corpus of the trust estate, and among these items appears the following: "J. P. Griffin—Mortgage $5,401.26."

No mention whatever is there made of the note given Johnson for $1,800.42, representing the one-third part of the purchase price of said lands purchased by Griffin, but it would appear that the entire amount, $5,401.26, was secured by mortgage.

On this account, the register made his report of audit, certifying to the court that the account was correct and supported by proper vouchers. The court approved this report of the register on May 29, 1930.

On January 24, 1931, the said trustee filed another account for partial settlement, in which the same item of $5,401.26, represented to be secured by the Griffin mortgage, appeared. This account was likewise approved by the court, upon report of the register.

It next appears that on January 9, 1933, Mr. Johnson, as such trustee, reported to the court that Mr. Griffin was indebted to the trust estate in the sum of $5,401.26, which *was secured by mortgage on certain lands in Pickens county;* that the mortgage was past due, and the mortgagor was unable to pay the indebtedness secured thereby, and on which there was accrued interest of $600, but was willing to reconvey the property to the petitioner, as such trustee, in payment of the indebtedness; and that the mortgagor, his wife, and son were willing to convey certain personal property to the said trustee in payment of the accrued interest. The report, in the nature of a petition, averred that the life beneficiary, J. R. Long, was willing that such an arrangement be carried out. No notice was given to any of the beneficiaries, in remainder, of said trust estate.

On January 14, 1933, the court authorized the said trustee to carry out the proposed agreement for settlement of the mortgage, and this was done. Griffin reconveyed the mortgaged property to Johnson as such trustee, and delivered over the personal property in payment of the past due interest.

By the terms of the agreement between said Johnson, as such trustee, and the Griffins, the said Johnson, as trustee, was to deliver over to said Griffin and his wife, "three notes for $1,800.42 each and mark satisfied the mortgage" upon the record. This agreement recited that the mortgage was given to secure said notes. This recital was, of course, not true.

Following this decree, or order, said Griffin and wife executed to the said trustee a deed of conveyance to the land covered by the mortgage, and the trustee canceled the mortgage upon the record.

On June 4, 1934, the trustee filed another account covering his acts and doing from January 1, 1931, to December 31, 1933. In this report or account, in referring to the corpus of the trust estate, we find the following: "Credit allowed on corpus as per decree of court in case of J. P. Griffin

Jan. 17, 1933, Minute Book H Page, $5,-401.26."

The court confirmed the report of the register, auditing and allowing the account, on July 31, 1934. No notice was given the minor beneficiaries of the remainder estate, nor was any guardian ad litem appointed for them.

On January 1, 1936, the said trustee filed his account and vouchers for a final settlement of his trusteeship.

On March 6, 1936, V. W. Elmore, as guardian ad litem for Joe Reed Long and Mary Ann Long, minors and interested in the trust estate, filed exceptions to the report of the trustee, objecting to the allowance inter alia, of the $5,401.26, representing Griffin's purchase of land, taking the position that the said trustee disobeyed the decree of the court, in permitting the land to be sold to Griffin, in that, instead of making the sale for one-third in cash and balance on time to be secured by mortgage, the trustee permitted the land to be sold on credit entirely, taking in lieu of the amount required in cash the unsecured personal note of said Griffin for $1,800.42. They seek to charge the said trustee with said $1,800.42, but without interest.

The chancellor sustained the exception of said minors, and held the trustee "Chargeable with the sum of $1,800.42, for and on account of one-third of the amount of the real estate credit sale to J. P. Griffin, and this $1,800.42 is hereby added to the corpus account with which the trustee is chargeable." However, the trustee was given the right to pay to the register the sum of $5,401.26, representing the full amount of the credit sale to J. P. Griffin, and to take the lands as his individual property.

■ It appears that the minors, Joe Reed Long and Mary Ann Long, who are interested in said trust estate, were given no notice of the several proceedings had in the cause, prior to the final settlement, and were given no notice of the several partial settlements made, or attempted to be made by the trustee, and no guardian ad litem was appointed to represent their interest in said proceedings. Hence they are not bound by said proceedings, and the court properly held, in view of those circumstances, that it had before it for consideration and decree the entire administration of the trust estate by the said Johnson as such trustee. Gilles-

pie et al. v. Gibbs et al., 147 Ala. 449, 41 So. 868; Mallow v. Hinde, 12 Wheat. 193, 6 L.Ed. 599; 3 Brickell's Digest, p. 373, § 97; 65 Corpus Juris, § 795, p. 901; Leonard v. Pierce, 94 App.Div. 266, 87 N.Y.S. 978; Speakman v. Tatem, 45 N.J. Eq. 388, 17 A. 818. And besides, by express provisions of sections 10443 and 10444 of the Code, no accounts taken on partial settlements are conclusive on any of the parties in the trust, but the trustee may be required to account up to the time of granting the application, in the same manner as if no proceedings had been had.

■ This court, in a very recent case, had occasion to make some observations upon the duties, obligations, and responsibilities devolving upon one who assumes to act as a trustee in making investments, and we there held that a trustee in making investments is not an insurer as to results, "but that all that can be exacted of him is *diligence* and *fidelity* in the discharge of his duties—the exercise of that prudence and care in the management of the trust which men of ordinary prudence exercise in like business of their own. This is the recognized rule. 'Infallibility is not exacted of trustees.'" Mann et al. v. Rudder et al., 225 Ala. 540, 144 So. 13, 15.

The trustee applied to the circuit court, which had jurisdiction of the trust estate, for authority to permit the lands, upon which the estate had a valid and enforceable mortgage, to be sold by the mortgagor in a certain manner, and upon terms stated, in lieu of a foreclosure, the proceeds to be applied to the payment of the mortgage indebtedness, and these terms were that the property should be sold for cash, or one-third cash, and the balance in two equal annual payments, with 8 per cent. interest on the two deferred payments, and to be secured by mortgage on the property. This authority was given the trustee, coupled with specific direction that, if the property should sell for less than the indebtedness, the trustee should proceed against the mortgagor for any balance. No other authority was given the trustee.

In conscious disregard of the extent of the authority conferred upon him, the trustee sold, or suffered to be sold, a large part of the property wholly on credit, for the agreed price of $5,401.26, taking to himself the unsecured note of the purchaser for $1,800.42 of the purchase price,

and two notes, payable to the mortgagor, and secured by mortgage on the property, for $3,600.84, for the balance. These two notes, along with the mortgage, it is true, were transferred to the trustee. In doing this, the trustee plainly violated the order of the court. Not only did he do this, but he treated the sale to Griffin, the purchaser, as having liquidated the balance due on the original mortgage, with the exception of a small balance of $164.92, which the mortgagor, Stewart, paid to said trustee. It is true that Stewart transferred the two notes for $3,600.84 given him by Griffin "with recourse," but not so as to the $1,800.42 note given by Griffin to Johnson, trustee, for the cash payment. This last-mentioned note was evidently intended to be treated as cash.

Not only was the above true, but Johnson, after the note given him by Griffin matured, and was not paid, reported to the court that the mortgage given by Griffin, on his purchase, secured an indebtedness to the estate of $5,401.26. Johnson at no time advised the court that he had disregarded its directions, and sold the property, or suffered the same to be sold, to Griffin wholly on credit. So far as the court knew, or was informed, the trustee, in the sale of the property to Griffin, faithfully observed the court's directions.

The conclusion is unescapable that the trustee not only violated the court's directions and orders, but also that Johnson, the trustee, withheld this information from the court until the loss occurred some years thereafter, and at a time when property had, by reason of the depression, greatly decreased in market value.

The evidence shows that the trustee, in taking the note of Griffin for the cash payment, was acting for himself, assuming personal responsibility for the cash payment. In the evidence, we find Johnson saying: "I then told him if he would bid on it up to at least $5000.00, that *I would carry it for him*, or a part of it, until January 1st. That was the way the sale was made." This shows that Johnson assumed the burden, individually, of paying the cash payment required on the land, viz., $1,800.42, and for which he took the purchaser's unsecured note.

The fact that the purchaser, being unable to pay anything on the principal of said indebtedness, has conveyed the property to the trustee, cannot serve to relieve Johnson of his liability to the estate for the $1,800.42. The beneficiaries in remainder had the right to a sale of the property at the price it would bring in October, 1929, and not its value in 1935 or 1936.

 The court, in decreeing that the trustee could pay the sum of $5,401.26, and take the property, gave to the trustee every equitable right that he could possibly assert, or to which he was entitled.

It follows, therefore, that we are of the opinion that the circuit court reached the proper decree in this cause, as to the matters here assigned for error, and its decree must be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.